[Cite as *Evans Landscaping, Inc. v. Stenger*, 2011-Ohio-6033.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EVANS LANDSCAPING, INC., | : | APPEAL NO. C-110104 |
| Plaintiff-Appellant, | : | TRIAL NO. A-0910954 |
| vs. | : | |
| TONY STENGER, | : | *O P I N I O N.* |
| and | : | |
| SHARLA STENGER, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  November 23, 2011

*Anthony J. Muto*, for Plaintiff-Appellant,

*David M. Blank*, for Defendants-Appellees.

Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}    Plaintiff-appellant Evans Landscaping, Inc., ("Evans") appeals the trial court's judgment awarding defendants-appellees Tony and Sharla Stenger (the "Stengers") $42,490 on their breach-of-contract and nuisance counterclaims against Evans relating to the construction of a pond.  Evans also appeals the trial court's judgment awarding Evans $8,389 on its claim for breach of contract against the Stengers for unpaid landscaping work.  For the reasons discussed below, we reverse that part of the trial court's judgment awarding the Stengers loss-of-use and annoyance-and-inconvenience damages, and we also reverse the trial court's judgment awarding Evans $8,389, instead of $8,329.  We affirm the remainder of the trial court's judgment.

## *Factual and Procedural Background*

{¶2}    In 2008, the Stengers hired David Habig of Evans to perform numerous landscaping services for their home in Walton, Kentucky, including constructing a fish pond, installing a fire pit and stone bench, and delivering plants.  Evans estimated that the pond would cost the Stengers $20,000 to $25,000.  The parties did not enter into a written contract, and instead Evans sent the Stengers invoices as the work progressed.  Evans began the landscaping work, and at first the Stengers were pleased with Habig's management.

{¶3}    By mid-June 2008, Evans had completed the pond.  Soon after the completion date, however, the pond began to leak.  Evans tried multiple times to find the source of the leak, and also made multiple repairs, but the water level of the pond continued to drop inexplicably.  The water level fell so low that, as Mrs. Stenger testified, the pond was "nothing but green scum."  Because of the unsightly pond,

2

and the mosquitoes that swarmed around it, the Stengers could not use their backyard. The Stengers became increasingly frustrated with Evans's attempts to repair the pond, and eventually, they stopped making payments on the invoices that Evans sent to them.

{¶4} Evans filed a complaint in Hamilton County Municipal Court in March 2009 against Mr. Stenger, which Evans eventually amended to add claims against Mrs. Stenger as well. The amended complaint alleged that the Stengers owed Evans $11,525.86, plus interest, on three invoices for the pond, plants, mulching, and the stone bench. Evans also alleged that the Stengers owed $8,798.77 for plants under a fourth invoice.

{¶5} In June 2009, well after the filing of the initial complaint, Evans's workers attempted to repair the pond once again, and in doing so, left dead fish scattered in the Stengers' backyard. As a result of this repair attempt, the Stengers had a meeting with Habig and another Evans employee to discuss the pond. When the Stengers could not reach a solution with Evans, they decided to rebuild the pond themselves.

{¶6} Mrs. Stenger testified that, before beginning the rebuilding project, she and her husband had hired Chris Dickerson of Gardens of Water to design the pond and to give advice on the proper method of construction. Dickerson charged the Stengers $4,272.80 for his services. The Stengers deconstructed and reconstructed the pond in 16 days with the help of hired workers, and they completed the pond by October 2009 at a cost of $24,990. Mrs. Stenger testified that she kept notes on all the expenses incurred as a result of the project, which included replacement fish,

3

materials, equipment rental, payments made to hired workers for their labor, as well time spent for their own labor.

{¶7} The pond was not the only problem that the Stengers had with Evans's performance. Evans also delivered various plants to the Stengers, which Evans had guaranteed would live for at least one year. The Stengers received the invoice for the plants in October 2009 in the amount of $8,798.77. Mrs. Stenger testified that not all of the invoiced plants were delivered, that some of the plants were returned, and that some of the plants did not live through the one-year period.

{¶8} The Stengers filed counterclaims against Evans for breach of contract with regard to the construction of the pond, and for nuisance, alleging that Evans had had a duty to construct the pond in a workmanlike manner and that Evans had breached that duty, negligently creating a nuisance on their property. The Stengers also alleged a breach-of-contract claim with regard to the plants. The action was eventually transferred to the Hamilton County Court of Common Pleas, where it proceeded to a bench trial.

{¶9} At trial, Habig testified that he was not experienced in pond construction and that, because the pond had continually leaked, at some point it had to be reconstructed. Habig took issue with the Stengers' calculation of damages. He testified that, in his opinion, the Stengers could have deconstructed and reconstructed the pond in less time and for less money. Habig also testified as to the unpaid invoices owed to Evans. Contrary to the Stengers' allegations, Habig testified that all the invoiced plants had been delivered.

{¶10} The trial court determined that the Stengers had proved their breach-of-contract claim with regard to the pond. The trial court found that the pond had

4

not been constructed as agreed. From this finding, the trial court concluded that Evans owed the Stengers cost-to-repair damages in the amount of $24,990.

{¶11} The trial court also determined that the Stengers had proved that Evans had negligently created a nuisance on the Stengers' property. The trial court found that the Stengers had been subjected to annoyance and inconvenience by the failed repair attempts, and that the Stengers had suffered the loss of the use of their property. The trial court concluded that the Stengers had suffered $10,000 and $7,500 in damages for their loss of use and for their annoyance and discomfort, respectively.

{¶12} The trial court also found that Evans had not delivered all the plants as agreed upon, and that not all of the delivered plants had lived through the one-year guaranteed period. The trial court found that the Stengers had acknowledged that they owed Evans $8,389, which included mulching, installing the stone bench, and the cost of the plants less those plants that had not been delivered or had not lived. The trial court then entered judgment for Evans on its breach-of-contract claim in the amount acknowledged by the Stengers. Evans now appeals from the trial court's judgment.

### Contract Damages Versus Tort Damages

{¶13} In Evans's first assignment of error, Evans argues that the trial court erred in awarding the Stengers damages for nuisance and for loss of use.

{¶14} Evans argues that under the rule in *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356, where real property has been damaged, although not irreparably, the property owner is limited to damages for the reasonable cost to restore the property and for the reasonable value of the loss of use of the property

during the damaged period. The Stengers respond that the *Ohio Collieries* rule has been expanded to allow for the recovery of damages for personal annoyance and discomfort. See, e.g., *Denoyer v. Lamb* (1984), 22 Ohio App.3d 136, 138-139, 490 N.E.2d 615 (applying 4 Restatement of the Law 2d, Torts (1965), Section 929, which allows damages for costs to repair the property, loss of use of the property, and personal annoyance and discomfort in cases where property has been damaged, but not totally destroyed).

{¶15} Although the parties seemingly agree that the *Ohio Collieries* rule of damages in a tort action applies to the Stengers' counterclaims, we determine that the *Ohio Collieries* rule has no applicability in this situation, and that the Stengers are limited to the recovery of contract damages only.

{¶16} The Stengers' counterclaims alleged claims under both tort and contract law. The Stengers alleged a breach-of-contract claim against Evans for its failure to complete the construction of the pond as expected. They also alleged that Evans had had a duty to construct the pond in a workmanlike manner, and that Evans had breached that duty, negligently creating a nuisance on their property. In general, where a contract action exists against a breaching party, a tort claim based upon the same underlying actions cannot coexist with the contract action, unless the breaching party also breached a duty owed independent of the contract. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 151, 684 N.E.2d 1261. The only duty alleged to have been breached by Evans was the duty to perform in a workmanlike manner.

{¶17} The duty of a builder or contractor to perform in a workmanlike manner is implied by the common law. *Barton v. Ellis* (1986), 34 Ohio App.3d 251,

6

252, 518 N.E.2d 18, citing *Mitchem v. Johnson* (1966), 7 Ohio St.2d 66, 218 N.E.2d 594; *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 433 N.E.2d 147. In *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St.3d 226, 2001-Ohio-1334, 754 N.E.2d 785, paragraph one of the syllabus, the supreme court held that where a home builder and resident enter into an agreement for the future construction of a home, the resident's cause of action for breach of an implied duty to build the home in a workmanlike manner arises out of the contract, ex contractu. By contrast, the supreme court held in *Velotta*, 69 Ohio St.2d at paragraph one of the syllabus, that "[a]n action by a vendee against the builder-vendor of a *completed residence* for damages proximately caused by failure to construct in a workmanlike manner using ordinary care * * * is an action in tort * * *." (Emphasis added). Therefore, if two parties enter into an agreement in which one party promises to build something in the future, the duty to build in a workmanlike manner arises out of the contract. If parties enter into an agreement in which one party promises to sell something that has already been constructed at the time of contracting, the workmanlike-manner duty arises in tort.

{¶18} Evans and the Stengers contracted for the future construction of the pond, and therefore Evans's duty to perform in a workmanlike manner in constructing the pond arose out of the parties' agreement. See, also, *Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, ¶21 (applying *Kishmarton* and determining that "because the paving contract was for future services, plaintiff's implied duty to perform in a workmanlike manner arose ex contractu as an implied bargain * * *.").

7

{¶19} Because the only duty identified by the Stengers in their counterclaim—the duty to perform in a workmanlike manner—arises out of the parties' agreement, the Stengers cannot rely on the breach of this duty as the basis for their nuisance claim. *Textron Fin. Corp.*, 115 Ohio App.3d at 151. The Stengers must rely on an independent duty to succeed on their nuisance claim. See *Neville v. City of Wyoming*, 1st Dist. No. C-020064, 2002-Ohio-4936, ¶13 (a qualified-nuisance claim requires a showing of negligence). Without identifying any other duty alleged to have been breached, independent of those arising out of the contract, the Stengers are limited to recovery under contract principles.

{¶20} In *Kishmarton*, the supreme court addressed the damages available in a contract action. The *Kishmarton* court adopted Restatement of the Law 2d, Contracts (1981), Section 353, which states that "[r]ecovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." 93 Ohio St.3d at 230. The supreme court determined that damages for loss of enjoyment of a residence and annoyance and discomfort were not properly recoverable as emotional-distress damages in a contract action absent the required showing under Section 353. Id. at 230.

{¶21} Applying Section 353 to the instant matter, no evidence exists in the record that Evans's breach of contract caused bodily harm to the Stengers or that serious emotional disturbance was a likely result of Evans's breach. Therefore, we must reverse that part of the trial court's judgment awarding the Stengers $10,000 for loss of use of their property, and $7,500 for annoyance and inconvenience. We sustain Evans's first assignment of error.

### *Cost-to-Repair Damages*

{¶22} In Evans's second assignment of error, Evans argues that the trial court erred in awarding the Stengers $24,990 for the cost to repair the pond. Evans first argues that the trial court erred in awarding cost-to-repair damages where no evidence was presented on the diminution in value of the property. We will not address this issue because Evans withdrew it at oral argument.

{¶23} Secondly, Evans contends that expert testimony was required to determine the appropriate manner in which to repair the leaking pond, and to determine the reasonableness of the Stengers' repair costs. Without expert testimony, Evans argues, the Stengers' actions in repairing the pond could have been excessive and unnecessary. Evans further argues that the trial court erred in accepting the Stengers' calculation of hours, rate of pay, and equipment needed to repair the pond, because the Stengers were not qualified experts on pond construction.

{¶24} We review a trial court's decision admitting or excluding evidence for an abuse of discretion. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶20. Evid.R. 702 permits expert testimony where the subject matter is outside the realm of a layperson's common knowledge or experience. Ohio law does not require expert testimony on all issues of cost-to-repair damages. As noted by the Second Appellate District in a case dealing with termite damage to residential property, "[e]xpert testimony is not always required to establish the necessity of repairs or the reasonableness of the costs incurred to repair * * *." *McCoy v. Good*, 2d Dist. No. 06-CA-34, 2007-Ohio-327, ¶21.

{¶25} Evans places primary reliance on *Hellkamp v. Boiman* (1970), 25 Ohio App.2d 117, 267 N.E.2d 323, in arguing that the Stengers were required to present expert testimony on the issue of cost-to-repair damages. In *Hellkamp*, the trial court ordered specific performance on a real-estate purchase contract in favor of the Hellkamps, the buyers. In addition to awarding specific performance, the trial court also awarded monetary damages to the Hellkamps for, among other items, damage sustained to the driveway. When Mr. Hellkamp was asked if he had an opinion as to the value he would place on repairing the driveway, he replied, "[a] couple hundred dollars." Id. at 122. This court determined that the trial court erred in permitting Mr. Hellkamp to testify "when there was no testimony by him that he was qualified as an expert to determine the fair and reasonable repair costs of the driveway." Id.

{¶26} Unlike *Hellkamp*, where Mr. Hellkamp had yet to repair the driveway and was merely speculating as to the cost to repair, in this case, the Stengers actually repaired the pond themselves. The trial court could have reasonably inferred from the evidence presented, without the aid of expert testimony, that the repairs to the pond performed by the Stengers were necessary. Evans's representative, Habig, testified that Evans was not experienced in constructing ponds, and that the pond kept leaking despite multiple efforts by Evans to find a solution. Habig testified that, because of the leaks, at some point the pond would have had to have been deconstructed and then reconstructed. The Stengers testified that they, along with hired workers, based on the advice of Gardens of Water, deconstructed and reconstructed the pond, and that the pond no longer leaks.

{¶27} Evans also argues that the trial court erred in allowing Mrs. Stenger, who was not a qualified expert, to testify as to the "outrageously large number of

10

hours of labor and excessive equipment use * * *." Mrs. Stenger testified that she and Mr. Stenger spent $24,990 in deconstructing and reconstructing the pond. Evans had the opportunity to attack the reasonableness of these repair costs through cross-examination and through the testimony of its own witnesses. Evans did not present any expert witnesses; however, Evans rebutted the Stengers' damages calculation with testimony from Habig that he believed the pond could have been deconstructed and reconstructed in a shorter period of time, and that the workers could have been paid less per hour. Nevertheless, the amount that the Stengers spent to repair the pond, $24,990, is not out of proportion to the $20,000-to-$25,000 estimate that Evans gave to the Stengers initially to construct the pond. Therefore, we cannot determine that the trial court erred in deciding the necessity and reasonableness of the cost-to-repair damages without the aid of expert testimony.

{¶28} Finally, Evans argues that the Stengers failed to prove their cost-to-repair damages with reasonable certainty, as they are required to do in a contract action. *Texatron Fin. Corp.*, 115 Ohio App.3d at 144. Evans argues that the Stengers' damages were speculative and unsupported because the Stengers only provided the court with handwritten notes, and no invoices, time sheets, or canceled checks.

{¶29} Evans's argument that the Stengers failed to establish their damages with reasonable certainty is not well taken. The Stengers testified as to the damages incurred, and the detailed notes kept by Mrs. Stenger regarding those damages were accepted as evidence. We cannot hold that the Stengers' evidence was speculative, even if not corroborated with other evidence, because it was evidence of actual expenses incurred. We overrule Evans's second assignment of error.

11

### *Manifest Weight of the Evidence*

{¶30} In Evans's third assignment of error, it contends that the trial court erred in awarding Evans only $4,660 on its breach-of-contract claim against the Stengers for plant delivery. We will not reverse a trial court's award on manifest-weight grounds as long as the award is supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Evans did not dispute at trial that it had delivered various plants to the Stengers, and that Evans had guaranteed the plants for one year. Mrs. Stenger testified that not all of the invoiced plants had been delivered, that some of the plants had been returned, and that some of the plants had not lived through the one-year period.

{¶31} The trial court clearly chose to believe Mrs. Stenger's testimony regarding the amount owed to Evans. The trial court stated on the record that it found that the Stengers owed Evans $4,600 for the plants, in accordance with Mrs. Stenger's testimony. The trial court's findings of fact and conclusions of law were inconsistent with the trial court's statements on the record, in that the written findings provided that the Stengers owed $4,660 for the plants. Therefore, we sustain Evans's third assignment of error to the limited extent that no competent, credible evidence existed for the trial court's written findings that the Stengers owed $4,660 for the plants, instead of $4,600.

{¶32} In conclusion, the portion of the trial court's judgment awarding the Stengers $10,000 for loss of use of their property and $7,500 for annoyance and inconvenience is reversed, and the portion of the trial court's judgment awarding Evans $8,389 on its breach-of-contract claim is reversed, and the cause is remanded

to the trial court.  We order the trial court on remand to enter judgment for Evans on its breach-of-contract claim in the amount of $8329—instead of $8389, and further order the trial court to enter judgment for the Stengers on their claims in the amount of $24,990.  We affirm the remainder of the judgment of the trial court.

Affirmed in part, reversed in part, and cause remanded.

**DINKELACKER, P.J.,** and **SUNDERMANN, J.,** concur.

Please Note:

The court has recorded its own entry on the date of the release of this opinion.