[Cite as *Metro Renovations 12, L.L.C. v. Sabir*, 2023-Ohio-1867.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| METRO RENOVATIONS 12, LLC, | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| BILAL SABIR, ET AL., | : | | Case No. 2022 CA 00022 |
| | : | | |
| Defendants - Appellants | : | | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Fairfield County Court of Common Pleas, Case No. 20 CV 243

JUDGMENT: Reversed in Part and Affirmed in Part

DATE OF JUDGMENT: June 6, 2023

APPEARANCES:

For Plaintiff-Appellee

MICHELLEA TENNIS
DANIEL FRUTH
Stebelton Snider LPA
109 N. Broad Street, Suite 200
P.O. Box 130
Lancaster, Ohio 43130

For Defendants-Appellants

FELICE HARRIS
Harris Law Firm, LLC
Reynoldsburg, Ohio 43068

*Baldwin, J.*

**{¶1}** Bilal and Faatimah Sabir appeal the Fairfield County Court of Common Pleas judgment in favor of appellee, Metro Renovations 12, LLC. The Sabirs also appeal the trial court's decisions finding that Bilal Sabir acted in bad faith and that Faatimah Sabir was liable for attorney's fees and court costs. The Sabirs also assign as error the trial court's decision barring Sabirs' expert from tendering an opinion regarding the percentage of completion of the project and they contend the trial court improperly took judicial notice of evidence outside the record.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** Appellant, Bilal Sabir, is a veteran of the Vietnam war who suffered a disabling injury during his service. Faatimah Sabir is his spouse and also serves as his veteran's affairs fiduciary. Together they determined that Bilal's quality of life could be improved by modifications to his home that would increase his mobility and preserve his independence. They sought and were granted a sum of money from the Department of Veteran's Affairs (VA) to complete renovations to Sabir Bilal's home to enable him to "'live more independently in a barrier-free environment.' VA Manual 26-12, Chapter 1-3." (Judgment Entry, March 23, 2022, p. 1; Exhibit 18, p. 1-4). The total amount allotted for this Special Adaptive Housing Grant (SAH) was $81,080.00.

**{¶3}** Metro Renovations 12, LLC (Metro) is a contractor with experience in renovation and construction of residential properties, but with no experience in completing renovations financed through a Specially Adapted Housing Grant financed by the VA. Bilal contacted Metro about completing the renovations to his home, and Metro, interested

in expanding their business into completion of SAH projects, agreed to meet with the Sabirs to discuss the project.

{¶4} After discussion the parties entered into an agreement for the completion of renovations to the home. The Agreement was comprised of a three-page contract, plans and a material list all of which were either signed or initialed by Bilal. This document was then approved by SAH Agent, Rand Barnes, as meeting the VA's minimum property requirements. (Exhibit 18, p. 5-8; Exhibits 21, 25).

{¶5} During the hearing Faatimah repeated that she was Bilal's VA fiduciary, implying that her presence or her approval was necessary for a valid contract. Neither Faatimah nor Bilal provided further insight regarding the purpose or breadth of her fiduciary authority and it is evident that she had no concern regarding his entering the Agreement at the time it was signed. During the trial, she acknowledged that she was aware that Bilal was executing the documents and that she was at work and was unable to attend the signing. There is no evidence that she took advantage of the opportunity to review the documents before or after they were approved by Bilal.

{¶6} The contract provided no initial payment, then five separate disbursements at specific stages of the project. The first disbursement was $10,000; the second disbursement was $28,800; the third disbursement was to be $14,000 the fourth disbursement was $12,000; and the final disbursement would represent 20.08 % of the contract or $16,280 for a total contract amount of $81,080.00. (Exhibit 40). Under the terms of the contract, the first four disbursements would occur after inspection and approval by the SAH agent with no requirement that Bilal be consulted for his input or

approval. Disbursement of the final amount required the written approval of the SAH agent and Bilal Sabir.

**{¶7}** The contract expressly states that only Bilal and Metro are parties to the contract but the VA retained the authority to inspect and confirm that Metro's work "conforms to the contract, plans and/or specifications submitted to and approved by the VA" prior to the disbursement of any funds. (Exhibit 1, ℙ I, VI, VIII; Exhibit 40). The fact that disbursements were made by the VA to Metro confirms that the SAH agent approved Metro's work. While the Sabirs expressed frustration with the SAH agent and the VA, disagreed with their assessment of Metro's work, and at one point insisted that a new SAH agent be assigned to their case, they did not include the SAH agent or the VA in this matter, so the approval of the SAH agent and the disbursement of funds subject to that approval are not at issue.

**{¶8}** The contract was to be completed within approximately ninety days of the deposit of the funds into escrow, but the contract contained no express date upon which work was to be completed, nor did it state that time was of the essence. While the record contains a reference to delay in the start of work due to the completion of unidentified documentation, it is not possible to determine with certainty who was responsible for that delay. Metro did begin work on the renovations in October. (Trial Transcript, p. 302, lines 9-14).

**{¶9}** The details of the contract changed significantly when it was discovered that the municipality would not issue a permit for the changes to the Sabirs' deck. The Sabir's assumed responsibility for obtaining that permit, explained that they intended to pursue litigation over that issue but did not succeed in obtaining a permit. Metro had completed

preparation of the porch and the deck, but halted all work when it became clear that no permit was to be issued to complete the deck. The modifications to the deck and the porch were removed from the scope of the contract and the price reduced by $14,000.00.

{¶10} The Sabirs requested additions to the contract including a generator, ceiling fan, smart thermostat, fireplace tile and sump pump repair, but these items were not part of the SAH grant. Metro completed work regarding some of those items and issued a separate invoice, but the Sabirs made no payment.

{¶11} Metro began work on the home in October 2018 while the Sabirs were out of the home. When the Sabirs decided to move back into the home in November 2018 the work was not yet completed and progress was slowed due to their presence. With the Sabir's in the home, Metro felt restrained to work only normal business hours and no earlier or later.

{¶12} The Sabir's were originally pleased with the work performed by Metro, at one point concluding a text message with a comment that "* * * overall I am quite pleased with your work and you." Exhibit 39, p. 5. The relationship soured later and the comments were not complementary. One of the last texts offered in Exhibit 39 reflects a comment from the Sabirs: "Curse you, and your lying mother, may you go out of business very, very soon! I hope you get nothing but Curse after Curse on you, your lying mother and your worthless bullshit business!" These comments were in response to a request from Metro: "VA has proved their unwillingness to help you or us. The court system hasn't been favorable for you either. You ready to talk and figure this out without our lawyer and VA? Or should we continue to let this money sit and escrow where neither of us can touch it? IM(sic) sick of all this red tape with having them involved. Let me know if you'd like to

come to a decision together so we can move forward in life." (Exhibit 30, p. 45). The dispute between the parties was not resolved and the current litigation is the result.

{¶13} The point at which the relationship broke down is not clear from the record. The Sabirs were frustrated that the project was not completed in the time frame they anticipated. When they discovered that Metro installed a laminate flooring instead of the wood that they expected, the relationship between the parties became more adversarial. Metro considered the project ninety-five to ninety-seven percent complete but they stated they were unable to complete the project because the Sabirs would not let them enter the home. Metro claimed that it made several attempts to enter the home or agree to a plan to finish the work, but they were not permitted access beginning in December 2018. The Sabirs claim they never prevented Metro from entering the home, but a comment of Faatimah Sabir regarding access suggests that permission was limited: "They were welcome to come back during the time that was allotted for them for the contract." (Trial Transcript, Volume II, page 315, lines 18-20).

{¶14} The VA attempted to assist with mediation, but that effort was unsuccessful and Metro claimed that the Sabirs continued to keep them from entering the home and completing the work.

{¶15} On April 2, 2019, the Sabirs filed a small claims complaint in Franklin County, seeking to recover hotel expenses and boarding expenses for their pets they attributed to Metro. (Trial Transcript, page 282, line 20 to page 283, line 3; page 288, line 8; page 314, lines 1-2, 11-12). Once the lawsuit was filed, the VA no longer attempted to engage in any mediation between the parties. On April 8, 2019 the Sabirs delivered an email to the VA and Metro explaining that they had lost all confidence in Metro and the

lack of confidence is why Bilal "has not decided to proceed with choosing any options presented." (Exhibit 31).

**{¶16}** The small claims complaint was dismissed and the dispute between the parties remained unresolved. Metro contends it offered to discuss a resolution of the matter with the Sabirs, but claims that their attempts were rejected. Bilal expressed his anger and frustration in expletive riddled texts he delivered to Metro toward the end of 2019.

**{¶17}** On July 17, 2020, Metro filed a complaint in the Fairfield County Court of Common Pleas alleging that Bilal had breached the contract and that the Sabirs had been unjustly enriched as a result of the labor and materials provided by Metro. The Sabirs responded by filing an answer and counterclaim alleging Metro breached the contract, that Metro was negligent and damaged the home and that Metro had been unjustly enriched as a result of the payment of services that were of no value to the Sabirs. The Sabirs also filed a third-party action against Esteban Ceron, a member of Metro, individually, claiming that his negligence was a direct and proximate cause of damages to the Sabirs. This third-party complaint was withdrawn prior to the trial court deciding the matter.

**{¶18}** Prior to trial there was a dispute regarding the Sabirs' identification of their expert witnesses and compliance with Civ.R. 26. After submission of motions, the trial court ordered that the Sabirs provide Metro the curriculum vitae and compensation schedule of the experts that they intend qualify as an expert witness on or before March 7, 2022 and warned that "failure to do so will result in the court precluding defendants from soliciting expert testimony from these witnesses." (Magistrate Order, March 4, 2022).

On March 7, 2022 the Sabir's filed a document stating that they were "unable to comply with the magistrate's order * * * will proceed with only the expert testimony of Richard Acree."

**{¶19}** The case was presented to the trial court on March 15, 2022 and completed the following day. On March 23, 2022 the trial court issued a lengthy judgment entry awarding plaintiff the amount of $28,290.00 and dismissing plaintiff's second cause of action regarding unjust enrichment for lack of evidence showing an increase in value of the Sabirs' home. The Sabirs' counterclaim was dismissed. The trial court also ruled that "[b]ecause the Defendant filed a small claims lawsuit against the sole owner of the Plaintiff during the execution of the contract, essentially preventing a workable solution being reached in good faith, this court will award attorney fees to the Plaintiff as well as assess court costs upon the Defendants." (Judgment Entry, March 23, 2022, page 4).

**{¶20}** The parties filed pleadings regarding the attorney fees and, on June 7, 2022 the trial court awarded Metro attorney fees and costs in the amount of $20,548.41.

**{¶21}** The Sabirs filed a notice of appeal and submitted six assignments of error:

**{¶22}** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING FAATIMAH SABIR LIABLE FOR ATTORNEYS FEES AND COURT COSTS."

**{¶23}** "II. THE TRIAL COURT ERRED IN FINDING BILAL SABIR "BREACHED THE WRITTEN CONTRACT BY REFUSING TO ALLOW PLAINTIFF TO COMPLETE THE CONTRACT FOR CONSTRUCTION SERVICES RENDERED UNDER THE CONTRACT."

**{¶24}** "III. THE TRIAL COURT ERRED IN DISMISSING DEFENDANT-APPELLANTS(SIC) FIRST DEFENSE AND COUNTERCLAIM AGAINST METRO RENOVATIONS 12, LLC."

**{¶25}** "IV. THE TRIAL COURT ERRED IN PROHIBITING DEFENDANTS' EXPERT FROM TENDERING AN OPINION AS TO METRO'S PERCENTAGE OF COMPLETENESS."

**{¶26}** "V. THE TRIAL COURT ERRED IN FINDING DEFENDANT, BILAL SABIR, ACTED IN BAD FAITH."

**{¶27}** "VI. THE TRIAL COURT ERRED IN TAKING IMPROPER JUDICIAL NOTICE OF EVIDENCE OUTSIDE THE RECORD."

### STANDARD OF REVIEW

**{¶28}** The issues presented in this appeal implicate different standards of review. This court reviews de novo issues of law, including the sufficiency of the evidence, See *N. Side Bank & Trust Co. v. Trinity Aviation LLC*, 2020-Ohio-1470, 153 N.E.3d 889, ¶ 17 (1st Dist.), but reviews fact finding under a deferential standard of review. In weighing the evidence, we must presume that the findings of the trier of fact are correct, and if the evidence is susceptible of more than one construction, as a reviewing court, we must give it that interpretation that is consistent with the verdict or finding and judgment. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21.

**{¶29}** While the standard of review in a breach of contract action is whether the trial court erred as a matter of law, the Sabirs' assignments of error focus on factual issues. *Unifund, CCR, L.L.C. v. Johnson,* 8th Dist. Cuyahoga No. 100600, 2014–Ohio–

4376 ¶ 7, citing *Arrow Unif. Rental LP v. Wills*, Inc., 6th Dist. Wood No. WD–12–057, 2013–Ohio–1829. To the extent a legal issue is addressed, we must "determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law." *Id.* At the same time, due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. *State v. Clements,* 5th Dist. No. 08 CA 31, 2008–Ohio–5549 ¶ 11.

## THE CONTRACT

**{¶30}** The contract between Bilal Sabir and Metro warrants examination prior to beginning our analysis as it differs significantly from the more common construction contract. The renovations to be completed under the contract were funded by a grant from the Department of Veteran's Affairs. In exchange for the grant, Bilal empowered the VA to inspect and approve the work that was completed as well as certify that Metro's work complied with the applicable Minimum Property Requirements (MPR), the Special Adaptive Housing Requirements and the plan that had been approved by the VA. While the contract explicitly states that the VA is not a party to the contract, it possessed authority to conclude that the work performed by Metro satisfied the requirements of the contract and to pay for that work. We find this significant because the Sabirs are contradicting the findings of the VA and claiming the work did not fulfill the terms of the contract and violated the MPR's, raising the question of whether the VA should have been included as a party to this action.

**{¶31}** The contract between Bilal Sabir and Metro was subject to the requirements established by the VA, the most relevant of which to this matter is that the funds be held in escrow subject to the completion of the process for the release of those funds to the

contractor. VA Manual 26-12, captioned Specially Adapted Housing Grant Processing Procedures Loan Guaranty Operations for Regional Offices (Manual) (Exhibit 18) contains an explanation of the regulations controlling the use and application of SAH grant funds. The Manual provides a clear requirement that the grant monies be deposited by the veteran, in this case Bilal, into an escrow account where they are to be held pending authorization of their release. (Manual, p. 8-2). Paragraph VIII of the contract provides that "Payment will be in accordance with VA procedures and in accordance with the disbursement schedule agreed to by the contractor and VA. It is understood that no payment will be made "up-front", and that there will be a holdback of 20% after the job is complete subject to final approval by VA and the veteran." (Exhibit 1, p. 3).

{¶32} Funds held in escrow are to be disbursed only after fulfilling the requirements of the Manual. At appropriate stage of the project, a Compliance Inspector (CI) who has been assigned to the project completes an inspection to ensure that the work completed by the contractor fulfills the term of the contract.

{¶33} The purpose of a compliance inspection is to verify compliance of individual construction phases, or turn-key construction, for all Specially Adapted Housing (SAH) and Special Housing Adaptation (SHA) grant projects in which grant funds are being disbursed to a builder. The compliance inspection is used to certify that the property has been constructed in accordance with Department of Veterans Affairs (VA) approved plans and specifications, including SAH minimum property requirements (MPs) and recommended adaptations (RAs).

{¶34} VA can authorize the release of grant funds to the builder only after:

- A compliance inspection has been completed by a VA-assigned compliance inspector (CI).

- A VA Form 26-1839, Compliance Inspection Report (CIR), indicating "no evidence of noncompliance observed" is received.

- The CIR has been reviewed and approved by the SAH Agent.

Manual, page 7-2.

{¶35} The parties acknowledge the authority of the VA to conduct the compliance inspections: "We, the undersigned, do hereby acknowledge and agree to periodic inspections and final approval by a VA compliance inspector and/or SAH agent of the above reference construction to assure that the construction conforms to the contract, plans and/or specifications submitted to and approved by the VA" and that payment will be made in accordance with VA procedures." (Exhibit 18, page 3).

{¶36} Upon the CI's report of compliance, the escrow agent is authorized to issue payment to the contractor. As noted in the Escrow Agreement signed by Bilal, "The Veteran agrees that for the purpose of this Agreement the VA Representative is authorized to consent on his/her behalf to disbursements of escrowed funds by the Escrowee to such payees, in such amounts and at such times as the VA Representative considers proper to fulfill the purposes and conditions of this Agreement." The Manual does provide that a signed letter of satisfaction from the Veteran is needed prior to the release of the final 20% of the contract amount, but this contract stalled prior to the final compliance inspection, and no Final Field Review was completed, so those provisions are not applicable. (Manual, p. 5-26, 7-10, 8-9, 8-11, 10-2).

{¶37} The record in this case contains evidence demonstrating that two disbursements were made by the VA to Metro, consequently the trial court had before it evidence to support a conclusion that the VA completed at least two compliance inspections and found that Metro had completed construction "in accordance with Department of Veterans Affairs (VA) approved plans and specifications, including SAH minimum property requirements (MPRs) and recommended adaptations (RAs)."

{¶38} We review the Sabirs assignments of error in the context of this unique contractual arrangement.

## ANALYSIS

{¶39} As a preliminary matter, we will address the first assignment of error regarding the award of attorney fees and costs against Faatimah Sabir with the fifth assignment of error addressing the finding of bad faith on the part of Bilal Sabir as it is the more logical place for that assignment.

## II.

{¶40} In their second assignment of error, the Sabirs argue that the trial court erred in finding that Bilal breached the written contract by refusing to allow Metro to complete the contract. The Sabirs offer citations to parts of the record reflecting correspondence regarding their request to have Metro complete parts of the project or make corrections, but it is evident that most of these exchanges occurred in the early part of December 2018. Metro offered testimony that supports a conclusion that it was excluded from the home "somewhere between December and January" or after much of the correspondence the Sabirs describe in their brief. (Trial Transcript, Vol. I, p. 129). Metro claims that it did send working crews to the home and that the Sabirs did not permit

them to enter. This rejection is confirmed in the email, delivered January 24, 2019 and admitted as Exhibit 27 where a representative from the VA states:

> * * I believe it will take some cooperation. It will also take your cooperation for Metro to be able to correct any defects that may exist in the work already completed.
>
> It seems that Metro is willing to attempt to address your concerns, but you must be willing to let them. In addressing any issues, Metro only must comply with the signed contract. No party of that contract is bound to any new terms, conditions, and/or materials that have not been agreed to by all parties and then formally adopted as a part of the contract.
>
> We all want resolution and we all want your satisfaction with the completed work. The work and materials are clearly defined in your husband's contract with Metro. The builder needs to be able to resume work to finish the project in accordance with the contract.

{¶41} Both witnesses who testified on behalf of Metro confirmed that they attempted to return to the site to complete the work and correct errors, but were not permitted access. (Trial Transcript, p. 59, lines 8-15; p. 131, line 7 to p. 132, p. 2). In response to a question regarding Metro being locked out of the premises, Faatimah responded in a manner that suggests that Metro's access was limited by Faatimah's belief that the contract was subject to a fixed date of completion:

> You're insisting that you did not lock Plaintiff off your property; that they were always welcome to come back. Right? Was that your testimony?

They were welcome to come back during the time that was allotted

for them for the contract.

Trial Transcript, p. 315, lines 14-10.

{¶42} This court relies on the trial court to resolve disputed issues of fact and weigh the testimony and credibility of the witnesses. *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). We defer to the trial court's discretion because the trial court had the opportunity to observe the witnesses and parties in weighing the credibility of the proffered testimony in a way a reviewing court cannot. The Sabirs sole issue in this assignment of error questions the factual finding of the trial court regarding whether the Sabirs prevented Metro from completing the contract. The parties provided contradicting evidence regarding whether Metro was permitted to enter the home to complete the contract and the resolution of that issue required the trial court to resolve the dispute based upon the weight of the testimony and the credibility of the witnesses. We find that the trial court's decision is supported by competent, credible evidence and that the trial court did not abuse its discretion in finding that the Sabir's prevented Metro from entering the home and completing the contract.

{¶43} The second assignment of error is denied.

**III.**

{¶44} In their third assignment of error, the Sabirs contend that the "trial court erred in dismissing Defendant-Appellants first defense and counterclaim against Metro Renovations 12, LLC." The Sabirs argue that Metro failed to meet the contractual

completion date, failed to complete the work in a workmanlike manner and fulfill the minimum property requirements and erred in addressing damages.

## COMPLETION DATE

**{¶45}** The contract contains a section captioned VII. COMMENCEMENT AND COMPLETION SCHEDULE that includes the following:

The work specified above shall be started on or about: Within two weeks of the grant check being placed in the escrow account.

Completed on or about: within ninety days of the start date.

**{¶46}** The Sabirs contend "the contract includes a date of completion" (Appellant's Brief, page 15) but no such date appears in the contract. As noted above there is a commencement and completion schedule which gives general instructions when the work is to begin and when it should be completed but no specific date for commencement or completion. The description of the commencement and completion as being "on or about" an unspecified date further undermines the Sabirs' contention that the contract was subject to a specific completion date.

**{¶47}** The contract provides work was to begin on or about "within two weeks of the grant check being placed in the escrow account." The Escrow Agreement, Exhibit 40, was signed by Bilal on October 16, 2018, and the terms of that Agreement provide that Bilal was to deposit the check on the day it was executed. Metro was to begin work no later than October 30 and, though the first date of work is not recorded in an exhibit, Metro filed a Partial Unconditional Waiver of Lien dated October 29, 2018 for labor and materials

provided prior to that date. (Exhibit 40, p. 5) Further, Sabir admitted in a response to a written interrogatory that the work began on October 17. (Trial Transcript, p. 302, lines 9-14). The record supports a conclusion that Metro began work in a timely manner.

**{¶48}** We have concluded that the Sabir's prevented Metro from entering the home and completing the work that remained unfinished in our resolution of the second assignment of error. That finding plays an important role in the resolution of this assignment of error as well. The delay caused by the Sabirs refusing access as well as any delay that may be attributable to the dispute over the permit for the deck, the vendor's delay in delivering appliances and the need to work around the Sabirs when they returned to the home played a role in Metro's inability to complete the project within ninety days of the start date. We cannot find that the trial court erred by not finding that Metro breached the contract by not completing the work in a timely manner.

**{¶49}** If, arguendo, we disregard the delays outside the control of Metro, we must determine whether the date of completion was a material term of the contract. Ohio cases have held broadly that time of performance is not of the essence of a contract unless made so by its terms or by the acts of the parties. *Hubbard v. Norton,* (1875) 28 Ohio St. 116, para. 4 of the syllabus. *Adams v. Walton,* 5th Dist. Morrow No. 601, 1983 WL 5069, *3; *Accord Brown v. Brown*, 90 Ohio App.3d 781, 784, 630 N.E.2d 763, 765 (11th Dist.1993), *cause dismissed,* 68 Ohio St.3d 1441, 626 N.E.2d 124 (1994) We have searched the contract to determine whether "the contract expressly provided that the time for completing the project was 'of the essence' and that the project had to be substantially completed within [90] days of the date of the commencement of the project." *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502,

¶ 3. The contract contains only the general description of the start date and completion date and no express completion date nor anything from which a reasonable person could imply that the parties had agreed that time was of the essence.

**{¶50}** The parties did not make the time of completion an essential element of the contract and the trial court did not err in failing to find that Metro breached the contract by failing to complete the project in a timely manner.

## WORKMANLIKE MANNER AND MINIMUM PROPERTY REQUIREMENTS

**{¶51}** Sabir urges us to find that Metro failed to complete the project in a workmanlike manner and did not satisfy the Minimum Property Requirements as required by the Manual. Minimum Property Requirements "are absolute conditions specified under governing law for the Specially Adapted Housing (SAH) grant." (Manual, Appendix A, p. A-2). The parties agreed and the Manual requires that the VA Representative complete an inspection and find that the work complies with the plans and the MPR before funds are issued. The parties also agreed that payment would be issued upon the approval of the work by the VA. The VA issued two payments, one in the amount of $10,000.00 and one in the amount of $28,000.00 comprising the first two disbursements described in the Escrow Agreement. This information supports a conclusion that the VA found that Metro satisfied the terms of the contract and fulfilled the applicable MPRs.

**{¶52}** The Sabirs did present the testimony of an expert who concluded that Metro failed to satisfy the MPRs, contradicting the implication to be drawn from the payment made by the VA. The trial court was required to weigh the evidence and testimony regarding compliance with the MPRs and the contract and we find that there was

sufficient, credible evidence to support a finding that Metro received approval of its work from the VA and, therefore, it satisfied the terms of the contract and the MPRs applicable to the stage of the project that had been completed.

**{¶53}** The Sabirs' expert, Richard Acree, completed a "limited accessibility survey" of the home and concluded that some elements were installed in error or omitted by Metro or exhibit poor workmanship. Acree submitted an extensive report containing a long list of criticisms and recommendations, but no comment regarding the approval received from the VA. Acree reviewed the projects as if the work had been completed, but Metro had been prevented from completing the project and the VA never had the opportunity to complete the final inspection, during which Bilal would have had the opportunity to reject Metro's work and insist on changes or withhold distribution of the final 20% of the contract amount.

**{¶54}** Also, Acree offers no information regarding whether the recommendations in his report could be completed with the grant money available.

**{¶55}** We find that the record supports the trial court's decision to give little weight to the report and that the trial court did not err by failing to find that Metro violated Minimum Property Requirements or that the work was not completed in a workmanlike manner.

**DAMAGES**

**{¶56}** The Sabirs contend that the trial court miscalculated damages, relying on a comment in an email from a VA Representative: "In reviewing the disbursement schedule, it seems that the builder is reasonably owed $12,000 to $15,000 based on stage 4 and taking into consideration a portion of the 20% holdback." (Exhibit 34, page 3). This

comment was made in the context of attempting to come to a compromise and does not appear to be offered as a firm figure. Further, that same email mentions that "[t]here is also some off contract work between the Sabirs and Metro Renovation that we have been made aware of for ceiling fans, the thermostat, the fireplace, and the sump pump. VA will not enforce any payment or agreement for that work that wasn't in the signed contract. The two parties can negotiate that separately without VA involvement. The builder could also use that additional work in lien proceedings."

**{¶57}** The amount that the "builder is reasonably owed" as described in this email was a factor that the trial court could consider, but was not a binding amount, does not appear to be calculated with accuracy and can interpreted as part of an effort to get the builder "out from under this" as quickly as possible. (Exhibit 34, page 1).

**{¶58}** The Sabirs also complain that the trial court did not permit Faatimah to testify regarding damages and that it required expert testimony to establish damages. As we have concluded that the trial court did not err is dismissing the counterclaim, this issue is moot. However, even if we would consider the merits, our conclusion would not change.

**{¶59}** Expert testimony is not always required to establish the necessity of repairs or the reasonableness of the costs incurred to repair such" *McCoy v. Good*, 2d Dist. No. 06–CA–34, 2007-Ohio-327, 2007 WL 196551, ¶ 21 as quoted in *Evans Landscaping, Inc. v. Stenger,* 1st Dist. No. C-110104, 2011-Ohio-6033, 969 N.E.2d 1264, ¶ 24, and lay persons can, in proper circumstances, testify regarding damages to property. In this case, Faatimah did not offer her own estimate of the damages, but only a comment regarding the conclusion of an expert who would not testify, so the trial court properly excluded it from the record. (Trial Transcript, p. 346). No other testimony from Faatimah or Bilal

regarding damages was proffered, so we find that the trial court did not err in its handling of damages.

**{¶60}** The third assignment of error is denied.

## IV.

**{¶61}** In their fourth assignment of error, the Sabirs claim the trial court erred in prohibiting their expert from tendering an opinion as to Metro's percentage of completeness.

**{¶62}** Richard Acree, the Sabirs' expert, was asked whether he felt he was competent to discuss the degree of completion and he stated "In most cases, yes" but he conceded that he had never been asked "to do this type of thing before." (Trial Transcript, p. 607, lines 1-12). Thereafter the parties engaged in a lengthy discussion regarding the propriety of the testimony, initiated by the trial court's comment that "This is too – it's too dangerous of a ground to pursue." (Trial Transcript, p. 609, lines 2-3). Metro's counsel objected:

MR. FRUTH: Your Honor, the problem here is that we're trying to stretch the witness beyond what he was disclosed to do.

THE COURT: I agree.

MR. FRUTH: And the reason we're trying to stretch the witness beyond what he was disclosed to do is because the other experts that would have competently addressed this issue were barred. So we're trying to make him do too much.

(Trial Transcript, p. 615, lines 7-17).

**{¶63}** Ultimately the trial court decided the testimony would not be allowed. (Trial Transcript, p. 615, lines 18-19). Sabirs counsel responded "Okay" continued the questioning of Acree and did not proffer the excluded testimony nor any evidence that would establish Acree's qualifications to provide an opinion regarding the percentage of completion.

**{¶64}** "When the court's ruling is one excluding evidence, a party must proffer the evidence at trial to preserve the issue for appeal." *State v. Smith,* 9th Dist. Wayne No. 15AP0001, 2017-Ohio-359, ¶ 19 as quoted in *State v. Freed*, 5th Dist. Fairfield No. 2019 CA 00018, 2020-Ohio-655, ¶ 28. The record in this case shows that the Sabirs were asking Acree to offer an opinion that he had not offered in any other case and which violated the court's requirements regarding disclosure of witnesses. Without a proffer explaining the qualifications of the witness and the evidence to be offered, we cannot consider this assignment of error.

**{¶65}** The fourth assignment of error is denied.

## I., V.

**{¶66}** We will consider the first and the fifth assignment of error collectively as they are closely related. In the first assignment of error, the Sabirs claim that the trial court erred as a matter of law in holding Faatimah Sabir liable for attorney fees and court costs and in the fifth assignment of error they claim the trial court erred in finding Defendant, Bilal Sabir, acted in bad faith, presumably in an attempt to undermine the basis for an award of attorney fees against him.

**I.**

**{¶67}** When considering an award of attorney fees, Ohio follows the "American Rule," under which a prevailing party in a civil action may not generally recover attorney fees. *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. However, attorney fees may be awarded when a statute or an enforceable contract specifically provides for an award of attorney fees, or when the prevailing party demonstrates the losing party acted in bad faith. *Id.* McHenry v. McHenry, 5th Dist. No. 2016CA00158, 2017-Ohio-1534, 88 N.E.3d 1222, ¶ 54. The Sabirs contend that Metro is not the prevailing party in relation to Faatimah as its only claim against her, unjust enrichment, was dismissed by the trial court "because there is no evidence in the record any(sic) appraisal that would indicate how much value the Defendants' home has increased because of the renovation work." (Judgment Entry, March 23, 2022, p. 4). Metro implicitly concedes this point, but argues that the trial court reinstated Plaintiff's claim for unjust enrichment against Faatimah Sabir or, in the alternative, that the trial court held she was a third-party beneficiary.

**{¶68}** A prevailing party is generally the party " 'in whose favor the decision or verdict is rendered and judgment entered.' " *Hagemeyer v. Sadowski* (1993), 86 Ohio App.3d 563, 566, 621 N.E.2d 707, quoting *Yetzer v. Henderson,* 5th Dist. No. CA–1967, 1981 WL 6293 *2 (June 4, 1981). *See also Falther v. Toney,* 5th Dist. No. 05 CA 32, 2005-Ohio-5954, 2005 WL 2995161. We find that with regard to the claim of unjust enrichment against Faatimah, Metro was not the prevailing party.

**{¶69}** The trial court dismissed Metro's unjust enrichment claim against Faatimah and we decline Metro's invitation to interpret the trial court's June 7, 2022 Judgment Entry

Regarding Fees and Costs as a reinstatement of that claim. The Entry contains no reference to the unjust enrichment claim and contains no information that can be interpreted as reversing trial court's March finding that Metro provided no evidence "that would indicate how much value the Defendants' home has increased because of the renovation work."

**{¶70}** Alternatively, Metro contends that Faatimah was found to be a third-party beneficiary when the trial court stated: "Despite the fact that Defendant Faatimah Sabir would sometimes act as her husband's veteran representative during the creation and, execution of the contract, both Faatimah Sabir and her husband would personally benefit from the improvements of the residence under the renovation contract." (Judgment Entry, June 7, 2022, p. 3).

**{¶71}** The trial court does not state that it is finding that Faatimah is a third-party beneficiary and we will not construe the entry to support such a conclusion. "Ohio law * * * requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12. The Supreme Court of Ohio adopted the "intent to benefit" test to measure the rights and responsibilities of a third-party beneficiary and found that if Metro had intended that Faatimah should benefit from the contract she could be an intended beneficiary with rights under the contract but if Metro had no intent to benefit her, then she was an incidental beneficiary who has no enforceable rights under the contract. The court also noted that "the mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise

must also satisfy a duty owed by the promisee to the beneficiary." *Hill v. Sonitrol of Southwestern Ohio, Inc.,* 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784–85 (1988) quoting *Norfolk & Western Co. v. United States* (C.A.6, 1980), 641 F.2d 1201, 1208.

**{¶72}** The trial court's finding that Faatimah would personally benefit from the improvements is, at most, a finding that she is an incidental beneficiary and not a third-party beneficiary to the contract against whom Metro was the prevailing party.

**{¶73}** Because Metro is not a prevailing party with regard to Faatimah, the trial court was not authorized to order her to pay attorney fees. The Sabirs' first assignment of error is sustained.

**V.**

**{¶74}** In their fifth assignment of error, the Sabirs contend that the trial court erred in finding that Bilal acted in bad faith.

**{¶75}** In the March 2022 Entry, the trial court stated: "Because the Defendant filed a small claims lawsuit against the sole owner of the Plaintiff during the execution of the contract, essentially preventing a workable solution being reached in good faith, this Court will award attorney fees to the Plaintiff as well as assess court costs upon the Defendants. The Plaintiff shall submit an attorney fee affidavit no later than April 7, 2022. A non-oral hearing shall take place on April 27, 2022 at 11 a.m." (Judgment Entry, March 23, 2022, p. 4). After the parties filed pleadings regarding their respective positions, the trial court awarded attorney fees to Metro after considering "all of the actions taken by Defendants during the execution of the contract" the trial court found "that the Defendants acted in bad faith, wantonly and/or obdurately." (Judgment Entry Regarding Attorney Fees And Costs, June 7, 2022, p. 1).

{¶76}  Attorney fees are not ordinarily recoverable but may be awarded where it is demonstrated that an action is defended in bad faith, namely, continuing litigation that is obdurate, vexatious, wanton, or engaged in for oppressive reasons. *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177 as quoted in *State ex rel. Esselburne v. Maurer,* 10th Dist. Franklin No. 89AP-953, 1991 WL 94443, *2. *See also State ex rel. Butterbaugh v. Ross Cty. Bd. of Commrs.,* 79 Ohio App.3d 826, 837, 608 N.E.2d 778, 785 (4th Dist.1992) Though not specifically labeled as such, we find the trial court essentially found and the evidence supported, that the Sabirs acted obdurately; therefore, attorney fees incurred to enforce Metro's contractual rights were recoverable for Sabirs' breach of the contract.

{¶77} Webster's dictionary defines "obdurately" as stubbornly persistent in wrongdoing; hardened in feeling; resistant to persuasion. *Stambaugh v. T.C. Wood Realty, Inc.,* 5th Dist. Morrow No. 09 CA 00008, 2010-Ohio-3763, fn. 3 and the trial court cites to instances of such obdurate behavior. Both Sabirs insisted they were entitled to wood flooring despite the contract clearly reflecting that they had chosen a laminate flooring. They argued that the contract had been altered to allow Metro to install appliances they had not chosen, but the evidence reflected that the correct appliances where installed. The trial court found, and we have found that the record supports the conclusion that the Sabirs prevented Metro from finishing the contract and filed a small claims suit that was unsuccessful on its merits, but did serve to prevent resolution of the dispute.

{¶78} Both Bilal and Faatimah complained that Metro's work failed to fulfill applicable MPR's and SAH standards and provided expert testimony to support that contention. Neither the Sabirs nor their expert addressed the fact that the VA was the

sole arbiter of the quality of the work prior to the last disbursement and that the record shows that the VA had concluded that the work satisfied the SAH standards and MPR's. The same expert criticized Metro's exterior work when the parties had agreed that it was no longer part of the contract and Metro would receive no payment for any work involved in the demolition they had completed on that part of the project. Metro fulfilled its duties under the contract and the Sabirs expert's opinion "truly didn't matter" and only served to increase Metro's litigation expenses. (Judgment Entry March 23, 2022, p. 3).

{¶79} After a review of the record we find that the trial court did not abuse its discretion when it concluded that Bilal "acted in bad faith, wantonly and/or obdurately."

{¶80} The fifth assignment of error is denied.

**VI.**

{¶81} In their sixth assignment of error, the Sabirs assert that the trial court erred in taking improper judicial notice of evidence outside the record. The Sabirs contend that because the second filing date is included within the trial court's June 7, 2022 entry, "it appears the trial court may have independently obtained information regarding the second filing and incorporated such information into its Judgment." (Appellants' Brief, p. 27).

{¶82} The record contains information regarding the small claims lawsuit filed by the Sabirs on April 2 that was dismissed and refiled in Fairfield County to recover money for the Sabirs' hotel stay and boarding their dog. (Trial Transcript, p. 283, line 10 to p. 284, line 2; p. 313, line 19, to p. 314, line 15). The Sabirs threatened to file a lawsuit and did file against the owner, Gloria Urrea. Both claims were dismissed. One case was dismissed for "the wrong court," and one for suing the owner instead of the Metro. (Trial

Transcript, p. 144, lines 22-24). The Sabirs notified the VA of the lawsuit and knew that the VA would "shut down" not "help anybody" and "everything is held up in escrow." (Trial Transcript, p. 315, lines 1-12).

{¶83} The trial court's findings regarding the lawsuit are supported by the record. In the March Entry, the trial court found that "defendant had filed a small claims lawsuit against the owner of the plaintiff's business on April 2, 2019 in the wrong jurisdiction and refiled days later in the proper jurisdiction." The trial court concluded "because the defendant filed a small claims lawsuit against the sole owner of the plaintiff during the execution of the contract, essentially preventing a workable solution being reached in good faith, this court will award attorney fees to the plaintiff as well as assess court costs upon the defendants." The June entry provides little additional information as the court found "that during the execution of the contract the defendants veteran representative (the defendant's wife) filed a small claims lawsuit against the owner of plaintiff reimbursement of hotel expenses and dog boarding. This lawsuit was first filed in the wrong jurisdiction (Franklin County) on April 2, 2019. The small claims action was then refiled by the veteran representative in Fairfield County on June 11, 2019, before it was dismissed."

{¶84} The only fact contained within the judgment entries that is not found within the record is the date of June 11, 2019. The Sabirs attach unwarranted significance to this date and claimed that it is evidence that the trial court "may have independently obtained information regarding the second filing and incorporated such information into its judgment." (Appellant's Brief, p. 27). After reviewing the record, we find that the trial court's findings are supported by the evidence in the record and that the date of June 11,

2019 is inconsequential. Even if the trial court had committed an error by including this date, the error is not materially prejudicial to the Sabirs as we find that the absence of this error would not have changed the outcome of the proceedings. *Fada v. Information Sys. & Networks Corp.* (1994), 98 Ohio App.3d 785, 649 N.E.2d 904 as quoted in *Nilavar v. Osborn*, 137 Ohio App.3d 469, 500, 738 N.E.2d 1271, 1293 (2nd Dist.2000).

**{¶85}**  The sixth assignment of error is overruled.

{¶86}  The decision of the Fairfield County Court of Common Pleas is reversed to the extent that it ordered Faatimah Sabir to pay attorney fees. The balance of the judgment is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.