[Cite as *Myers v. United Ohio Ins. Co.*, 2012-Ohio-340.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


CHARLES MYERS aka CHUCK MYERS, et al.,

     Plaintiffs-Appellees

-vs-


UNITED OHIO INSURANCE CO.

     Defendant-Appellant

| | |
|---|---|
| : | JUDGES: |
| : | William B. Hoffman, P.J. |
| : | Sheila G. Farmer, J. |
| : | Julie A. Edwards, J. |
| : | |
| : | Case No. 11CA000009 |
| : | |
| : | |
| : | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from Guernsey County Court of Common Pleas Case No. 09-CV-665 |
| JUDGMENT: | Vacated; Final Judgment Entered |
| DATE OF JUDGMENT ENTRY: | January 26, 2012 |

APPEARANCES:

| For Plaintiffs-Appellees | For Defendant-Appellant |
|---|---|
| DANIEL G. PADDEN | MICHAEL R. HENRY |
| Tribble, Scott, Plummer & Padden | MATTHEW R. PLANEY |
| 139 West 8th Street | Crabbe, Brown & James, LLP |
| P.O. Box 640 | 500 South Front Street, Suite 1200 |
| Cambridge, Ohio 43725-0640 | Columbus, Ohio 43215 |

*Edwards, J.*

**{¶1}** Appellant, United Ohio Insurance Co., appeals a judgment of the Guernsey County Common Pleas Court awarding appellees Charles and Valerie Myers damages in the amount of $51,576.00.

STATEMENT OF FACTS AND CASE

**{¶2}** In 2006, appellees decided to build a home on their property on Rough and Ready Road in New Concord, Ohio. While driving around the area, they saw a home built by Perry Miller. They walked through the home and eventually entered into a contract with Miller to build a home on their property. The home was built on a slab and consisted of one bedroom, one bathroom, a kitchen and a living room.

**{¶3}** Appellees decided to add on to the original home. Because Miller was familiar with their home, they entered a contract with him on July 7, 2007, to build a twenty by forty-eight foot addition including a full basement and interior and exterior staircases. The contract called for a separate sixteen by twenty-four foot addition including a full bathroom, bedroom and hallway. Miller was also to construct a garage with two overhead doors.

**{¶4}** Late in 2007, one of the basement walls constructed by Miller began to crack and bow. Miller used wood boards to support the wall and eventually had to replace the wall in December of 2007.

**{¶5}** Miller began showing up at the construction site less and less. By spring of 2008, he stopped working on the project. When efforts to contact Miller by telephone failed, appellees went to his house. Miller advised appellees that he had another job and did not have time to complete the work on their home.

{¶6}   Appellees had a number of contractors look at the work in order to have the work finished.  One noted that there was a "bath tub effect" on the roof and the roof was leaking.  He also noted that a second basement wall constructed by Miller was bowing.

{¶7}   In the spring and summer of 2008, this second basement wall began to bow and crack, allowing water into the basement.  Appellees attempted to use wood to brace the wall, but eventually the wall was replaced by James Flesher at a cost of $18,576.00.  According to Flesher, if the wall had not been replaced it would have collapsed.

{¶8}   Also in the spring and summer of 2008, the roof over the addition of the home began to leak in five or six places before they could paint the drywall in the addition.  The leaking caused water stains on the drywall and caused the drywall to separate and tear.  Flesher inspected the roof and noted that there is not enough pitch on the roof, causing it to hold water like a bowl instead of allowing it to run off.  In his opinion, the roof needed to be replaced.

{¶9}   J.D. Jones, housing inspector for Guernsey County, inspected the addition for mold and moisture issues.  He noted that the roof system does not allow for proper ventilation, causing moisture and mold damage.

{¶10} Appellees filed the instant action against Miller, alleging that he failed to complete the work called for in their contracts with him concerning the construction of the addition and garage.  The complaint also alleged that the completed work was done in an unworkmanlike manner.

{¶11} On July 29, 2010, appellees filed an amended complaint including the same claims against Miller but adding appellant as a defendant based on a general liability policy of insurance appellant had issued to Miller. Appellant filed a counterclaim and cross claim seeking a declaratory judgment clarifying the scope of coverage under the policy based on appellees' claims against Miller.

{¶12} The case proceeded to bench trial in the Guernsey County Common Pleas Court on February 16, 2011. Appellees voluntarily dismissed Miller because he had received a discharge in bankruptcy applicable to all claims asserted against him by appellees.

{¶13} Following trial, the court found that the policy of insurance appellant issued to Miller does not provide coverage for defective or faulty workmanship, but did provide coverage for consequential damages related to repairs for mold and water damage caused by repeated exposure to the elements. Appellant had conceded liability under the policy in the amount of $2,000.00 to repair water damage to the drywall. The trial court found appellant liable to appellees under the policy for damages in the amount of $51,576.00, which included $12,000.00 to re-work the main roof and ceiling over the original structure, $19,000.00 to replace the roof and ceiling in the addition, and $18,576 to replace the basement wall.

{¶14} Appellant assigns five errors on appeal:

{¶15} "I. THE TRIAL COURT ERRED BY FINDING AN 'OCCURRENCE' WHICH CAUSED 'PROPERTY DAMAGE' FOR WHICH UNITED OHIO HAD A DUTY TO INDEMNIFY MILLER WHEN THE DAMAGES ALLEGED WERE RELATED TO FAULTY WORKMANSHIP OF UNITED OHIO'S INSURED.

**{¶16}** "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING ANY DAMAGES RELATED TO THE REPLACEMENT OF THE BASEMENT WALL CONSTRUCTED BY MILLER RELATED TO MOLD OR OTHERWISE.

**{¶17}** "III. THE TRIAL COURT ERRED IN AWARDING DAMAGES AND FINDING COVERAGE UNDER THE UNITED OHIO POLICY WHEN A VALID FUNGI OR BACTERIA EXCLUSION TO COVERAGE IN THE UNITED OHIO POLICY WOULD ALSO APPLY.

**{¶18}** "IV. THE TRIAL COURT ERRED IN AWARDING DAMAGES RELATED TO ANY DEFECTS AFFECTING THE ROOF OVER THE MYERS' MAIN HOME AND THE GARAGE CONSTRUCTED BY MILLER.

**{¶19}** "V. THE TRIAL COURT ERRED IN AWARDING JUDGMENT AGAINST UNITED OHIO FOR CONSEQUENTIAL DAMAGES IN THE AMOUNT OF $51,576.00 WHEN ANY POTENTIALLY COVERED CONSEQUENTIAL DAMAGES RELATED TO UNITED OHIO'S INSURED'S WORK WAS LIMITED TO $2,000.00."

I

**{¶20}** In the first assignment of error, appellant argues that the court erred as a matter of law in finding that repeated exposure to rain and snow in the home was an "occurrence" within the meaning of the policy.

**{¶21}** The court made the following findings concerning whether the damage was an "occurrence" that is covered under the policy:

**{¶22}** "4. The Court concludes as a matter of law that the legal issue of the construction within the insurance policy contract of the term 'occurrence' was addressed by the Fifth District Court of Appeals in the case of *Bogner Construction Co. vs. Field &*

*Associates, Inc.* case no. 08-CA-11, Knox Co., January 13, 2009, 2009 WL 91300. The Fifth District Court of Appeals has stated that when defective workmanship results in collateral damage, an 'occurrence' under the terms of the general liability policy occurs.

**{¶23}** "5. The Court concludes that the damages suffered by the Plaintiffs herein are consequential damages stemming from the contractor (Miller's) work.

**{¶24}** "6. The Court concludes from the facts of this case that these damages occurred due to a repeated exposure to the moisture leaking into the home through the roof, walls and basement.  Thus, the property damage herein was caused by an 'occurrence', which the policy defines as 'an accident, including continuous or repeated exposure to substantially the same harmful conditions.'

**{¶25}** "7. The Court, therefore, concludes as a matter of law, in accord with the principle applied with Ohio Courts and the Fifth District Court of Appeals that the defective workmanship herein does not constitute an 'occurrence' or an accident. However, the repeated exposure to the elements has resulted in consequential damages and this property damage is caused by an 'occurrence' which is not excluded in the policy.

**{¶26}** "8. The Court further concludes that the Plaintiffs' home is now damaged by mold which is growing in the home due to the repeated exposure to moisture.  There is no evidence that the mold was in existence in the home prior to the occurrence due to harmful conditions which have caused the mold to grow.  This occurrence has resulted in the Plaintiffs' home being damaged in the sum of $51,576. pursuant to Plaintiffs' Exhibits 11 and 12."  Judgment Entry, March 23, 2011, Conclusions of Law 4-8.

**{¶27}** This court's standard of review concerning questions of law is de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684; *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889.

**{¶28}** In the instant case, the policy issued to Miller provides coverage for property damage only if it is caused by an occurrence that takes place in the coverage territory. The policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Businessowners Coverage Form, Defendants Exhibit A, p. 39.

**{¶29}** In *Bogner Construction Company v. Field & Associates, Inc.*, Knox App. No. 08 CA 11, 2009-Ohio-116, City of Mount Vernon school board had contracted with Bogner for the construction of a new middle school. The school board asserted breach of contract claims against Bogner based on Bogner's failure to construct a roof that conformed to the project specifications. The complaint alleged that the roof leaked, causing property damage not only to the roof but also to tangible property other than the roof itself, including ceiling tiles and furnishings.

**{¶30}** Bogner was insured by a comprehensive general liability policy issued by USF&G which provided coverage for property damage caused by an "occurrence," and defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Id. at ¶41.

**{¶31}** This Court noted that the language of the policy was "clear and plain, something only a lawyer's ingenuity could make ambiguous." Id. at ¶42, quoting *Royal*

*Plastics v. State Auto. Mut. Ins. Co.* (1994), 99 Ohio App.3d 221, 225. We then turned to the issue of whether any of the claims fell within the scope of the insurance policy coverage.

{¶32} Citing *Environmental Exploration Company v. Bituminous Fire & Marine Insurance Co.,* (October 16, 2000), Stark App. No. 1999CA00315, we held that defective workmanship does not constitute an accident or occurrence under a commercial general liability policy. Id. at ¶44. If the policy is construed as protecting a contractor against defective workmanship, the insurer becomes a guarantor of the insured's performance under the contract, and the policy becomes a performance bond. Id. at ¶48. The policy does not insure an insured's work itself, but rather insures the consequential risks that stem from the insured's work. Id. at ¶49. General commercial liability policies are not intended to insure the normal, frequent or predictable costs of doing business. Id. Such policies are intended to insure the risks of an insured causing damage to other persons and their property, but are not intended to insure the risks of an insured causing damage to the insured's own work. Id. We found that there was no "occurrence" within the meaning of the policy, and therefore, no coverage.

{¶33} As to the roof, the trial court awarded damages for repair and replacement of the roof, finding that the snow and rain that accumulated on the roof was an "occurrence" within the meaning of the policy. However, the claim and all of the evidence presented at trial was that the roof was not properly constructed by Miller, causing a "bowl" type effect on the roof which allowed water and rain to collect rather than run off. The very purpose of a roof is to prevent rain and snow from entering the interior of the home and causing damage. The repeated exposure of the roof to rain

and snow is not a separate cause of roof failure, but is the means by which the faulty construction of the roof became apparent to appellees. The damages awarded for repair of the roof were not damages for consequential or collateral damage caused to the interior of the home, but rather were for damage to the work product itself and thus did not qualify as an occurrence under the plain language of the policy.

{¶34} Similarly, the court awarded damages for replacement of the basement wall. The evidence presented at trial was undisputed that the reason the wall bowed, cracked and ultimately allowed water to seep in was because it was improperly constructed by Miller. Again, the replacement of the basement wall was not collateral or consequential damage, but rather was damage to the work product itself caused by faulty construction.

{¶35} Appellees argue that their trial exhibit 13, a letter from appellant to their attorney, concedes liability for the damages awarded by the trial court. The letter provides in pertinent part:

{¶36} "As we discussed on the telephone prior, workmanship and the actual work product of our insured is excluded under policy coverage. Resulting damage from the work of our insured is determined as follows:

{¶37} "Water has entered the roof structure resulting in water leaks and stains in the family room ceiling and portions of the finished side of the exterior south wall.

{¶38} "The resulting damage is not workmanship, or work product, and would be afforded coverage for the repairs of the resulting damage only. Please provide your contractor estimate for repair of the resulting damage for review and payment."

**{¶39}** This letter recognizes that appellant is not liable for the workmanship and work product of Miller. Appellant states that coverage is provided only for resulting water damage, such as stains in the ceiling of the family room, and not for the faulty work itself. Appellant conceded $2,000.00 in repairs for water damage at trial. However, this letter does not inform appellees that there is coverage for replacement of the roof and basement wall, and limits coverage to resulting damage from the leaks in the roof.

**{¶40}** The first assignment of error is sustained.

II

**{¶41}** Appellant argues that the court erred in awarding damages for replacement of the basement wall as mold remediation when there was no evidence presented that the problems with the basement wall contributed to the mold problem in the home.

**{¶42}** A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. As the trier of fact, the judge is in the best position to view the witnesses and their demeanor in making a determination of the credibility of the testimony. "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." *State ex rel. Celebrezze v. Environmental Enterprises, Inc.* (1990), 53 Ohio St.3d 147, 154, 559 N.E.2d 1335.

**{¶43}** While appellant Valerie Myers testified that there was mold in the basement, there is no evidence that replacement of the basement wall was necessary because of mold damage. Flesher testified that the basement was going to cave in if the wall wasn't replaced because of cracking and bowing. J.D. Jones testified concerning mold issues caused by the roof leaking, but did not present any evidence about the basement wall.

**{¶44}** The second assignment of error is sustained.

III

**{¶45}** Appellant argues that the exclusion in the insurance policy related to property damage caused by fungi or bacteria precludes recovery of damages for mold. The policy provides in pertinent part:

**{¶46}** "q. Fungi or Bacteria

**{¶47}** "(1) . . . 'property damage' . . . which would not have occurred, in whole or in part, but for the . . . existence of, or presence of, any 'fungi' . . . on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**{¶48}** "(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or exposing of, or in any way responding to, or assessing the effects of, 'fungi' or bacteria, by any insured or by any other person or entity."

{¶49} J.D. Jones testified that mold is a type of fungus. By the clear language of this policy exclusion, coverage is not provided for any property damage which is attributable to mold.

{¶50} The third assignment of error is sustained.

IV

{¶51} Appellant argues that the court erred in awarding damages for repair of the original roof because such repairs are not an "occurrence" under the policy.

{¶52} For the reasons stated in assignment of error one above, the moisture problems with the house which required re-working and replacement of the roof are due to faulty workmanship by Miller. Faulty workmanship on the roof is not an "occurrence" within the meaning of the policy and damages awarded to repair the incompetently constructed roof are not authorized by the insurance policy.

{¶53} The fourth assignment of error is sustained.

V

{¶54} Appellant argues that its liability is limited to the $2,000.00 they conceded at trial for water damage on to the drywall. For the reasons stated in assignments of error one through four, we agree. The fifth assignment of error is sustained.

{¶55} The judgment of the Guernsey County Common Pleas Court is vacated. Pursuant to App. R. 12(B), we hereby enter final judgment in favor of appellees Charles and Valerie Myers in the amount of $2,000.00.

By: Edwards, J.

Hoffman, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/r1121

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

CHARLES MYERS aka CHUCK      :
MYERS, et al.,                     :
                                       :
           Plaintiffs-Appellees    :
                                       :
                                       :
-vs-                               :        JUDGMENT ENTRY
                                       :
UNITED OHIO INSURANCE CO.    :
                                       :
          Defendant-Appellant   :        CASE NO. 11CA000009


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas is vacated.  Pursuant to App.R. 12(B) we hereby enter final judgment in favor of appellees Charles and Valerie Myers in the amount of $2,000.00.  Costs assessed to appellees.

                                           _____

                                           _____

                                           _____

                                                 JUDGES