[Cite as *A1 Heating & Cooling, Inc. v. Thomas*, 2024-Ohio-109.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| A1 HEATING AND COOLING, INC. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
|     Plaintiff-Appellant | |
| -vs- | Case No. 2023 CA 0017 |
| TRENT THOMAS, ET AL. | |
|     Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:      Civil Appeal from the Municipal Court, Case
No.  2022 CVG 00525


JUDGMENT:                  Affirmed


DATE OF JUDGMENT ENTRY:      January 17, 2024


APPEARANCES:

For Plaintiff-Appellant              For Defendants-Appellees

BRIAN W. BENBOW              JONATHAN A. VELEY
BENBOW LAW OFFICES LLC      THE LAW OFFICES OF
265 Sunrise Center Drive        JONATHAN A. VELEY, LLC
Zanesville, Ohio  43701          2034 Cherry Valley Road
                                  Newark, Ohio  43055

*Wise, P. J.*

**{¶1}** Appellant-Plaintiff, A1 Heating and Cooling, appeals the decision of the Licking County Municipal Court dated October 22, 2022, after a bench trial, finding that Appellees-Defendants, Trent Thomas and Jessica Thomas, are entitled to judgment in the amount of $5.00. Appellant also appeals the decision of the Licking County Municipal Court dated February 3, 2023, after an evidentiary hearing, finding that Appellees are entitled to reasonable attorney's fees in the amount of $2,884.73 under the Home Construction Solicitation Sales Act (HCSSA) and $750.00 as sanctions against Appellant's counsel for violations of R.C. 2323.51 and Civil Rule 11. Finally, Appellant appeals the decision of the County Court of Muskingum County, Ohio dated March 10, 2022, finding that venue is proper in the Licking County Municipal Court.

**{¶2}** For the reasons set forth herein, we affirm the decisions of the trial court.

### FACTS AND PROCEDURAL HISTORY

**{¶3}** On June 4, 2020, Brad Welker, Owner of A-1 Heating and Cooling ("A-1") located in Zanesville, Ohio, received an email from Trent Thomas with home blueprints attached. The purpose of the email was to obtain a bid for plumbing for a new home and attached garage for a residence the Thomases were building in Nashport, Licking County, Ohio. These blueprints did not show a basement; only a crawl space. However, the email from Thomas stated that he was "looking to do a full basement." "I am not finishing the basement at this time, but I would like to get the drain roughed in for a full bathroom and sump pump before basement is poured." (Pl. Exh. 2). Later emails requested a quote for HVAC – a geo-thermal heating and cooling system, and attached blueprints showed a full basement with bathroom drain lines. (Pl. Exh. 31-34).

**{¶4}** Welker met Thomas at the home project site and submitted a quote for both projects. It was accepted by the Thomases. The price for the geo-thermal unit was $17,250.00 including equipment, material, labor and tax. (Pl. Exh. A). The price for the "main body of house" plumbing was $10,375.00 including equipment, material, labor and tax. (Pl. Exh. B). Trent Thomas was acting as his own general contractor for the house project, and A-1 was hired as a subcontractor for purposes of installing the heating, cooling unit and plumbing. A-1 began work on the Thomas residence on or about September 29, 2020.

**{¶5}** On September 30, 2020, another email with a sketch of the basement area was sent by Thomas to A-1. The basement sketch contained the measurements of the basement bathroom so that A-1 could run the "drain lines for the tub, toilet and vanity." (Pl. Exh. 10, 31-34).

**{¶6}** Various invoices were sent to the Thomases by A-1 showing balances due. It is undisputed that the Thomases paid the quoted prices to A-1 in installments for a total of $27,625.00.

**{¶7}** On September 17, 2021, A-1 sent an invoice to the Thomases reflecting, *inter alia,* an additional charge of $4,995.00 for extra work not included in the quoted price. The bulk of the extra charge was for the basement bathroom, namely for additional water lines ran outside for toilet, grinder pump, etc. at a cost of $3,400.00. (Pl. Exh. 26, 35). Thomas asked if the $3,400.00 was a typo and should have been $340.00. He was told it was not and that it was a charge for the basement bathroom not covered in the quotes and invoices received from A-1. (Pl. Exh. 28). The Thomases refused to pay the invoice, and A-1 refused to request a final plumbing inspection from the Licking County

Health Department. As a result, the Thomases requested and obtained the final plumbing inspection and approval from the County as Thomas Construction. (Pl. Exh 29).

{¶8}    The Thomases moved into their new residence and in November, 2021, received a debt collection letter from Benbow Law Offices requesting a $4,995.00 payment for services performed by A-1.  When no payment was made, A-1 filed a complaint for money damages in the County Court of Muskingum County, Ohio on January 3, 2022.  An answer and counterclaim were filed by the Thomases on March 3, 2022, alleging as an affirmative defense improper venue and violations of the Home Construction Services Suppliers Act ("HCSSA") and the Consumer Sales Practice Act ("CSPA").

{¶9}    On March 7, 2022, A-1 filed an answer to defendant's counterclaim alleging, *inter alia*, violations of the HCSSA by the Thomases. (Plaintiff's reply to defendant's counterclaim, Affirmative Defense No. 7).  The answer also alleged that venue may be improper (Plaintiff's reply to defendant's counterclaim, Affirmative Defense No. 9).  A-1, by separate pleading, filed a motion to dismiss the Thomas' counterclaim.

{¶10}   On March 14, 2022, the County Court of Muskingum County transferred the case to Licking County Municipal Court.

{¶11}   On April 13, 2022, the Licking County Municipal Court denied the motion to dismiss the counterclaim, and the matters proceeded in the Licking County Municipal Court.

{¶12}   Following discovery, a bench trial was held on September 23, 2022.  Brad Welker testified on behalf of A-1, and Trent and Jessica Thomas testified on behalf of the Appellees.

**{¶13}**　Following the trial, the parties submitted post trial briefs. A-1 filed a motion to dismiss the Thomases' post trial brief for untimeliness, which was later withdrawn. The Thomases requested attorneys' fees for frivolous conduct under Civ.R. 11 and R.C. 2323.51(A), as well as attorneys' fees for violations of the HCSSA.

**{¶14}**　On October 31, 2022, the trial court issued its five-page judgment entry which contained findings of fact and conclusions of law. First, it set forth the standard of proof – preponderance of the evidence. Second, it set forth the relevant facts and identified the main issue – the extra costs invoiced by A-1 for plumbing associated with the basement bathroom. Third, it set forth its finding that there was no discussion about extra costs for the basement bathroom and found the testimony of Thomas more credible that the cost for the basement bathroom was included in the quote from A-1 for plumbing for the main home. The trial court found that the only additional cost that was agreed upon was for a water line and drain for an outbuilding.

**{¶15}**　Next, the trial court found that the plaintiff did violate the HCSSA, R. C. 4722.01, *et seq.* finding that A-1 violated several requirements of the HCSSA including charging the defendants extra charges that were not approved by the Thomases.

**{¶16}**　Finally, the trial court rendered its decision on damages. It found that the Thomases did not prove their allegations of work not performed in a workmanlike manner by a preponderance of the evidence, particularly as to the allegations regarding the geo-thermal heating and cooling unit. It found that A-1 was not entitled to charge for the basement bathroom because of its violation of the HCSSA. As to A-1's claim of unjust enrichment, however, the trial court awarded it $600.00 for its installation of the water line and drain for the outbuilding. As for the Thomases' claim for damages, it awarded them

$330.00 for the cost of the final plumbing permit and $275.00 for the cost of the drywall repair damaged as the result of a leaking shower.

{¶17}   After setting off the awards, the Thomases were awarded a final judgment of $5.00.  (Judgment Entry, Oct. 31, 2022).

{¶18}   A hearing on the Thomases' request for attorneys' fees for violation of the HCSSA and sanctions for frivolous conduct under Civ.R. 11 and R.C. 2323.51(A) was held on January 12, 2023.[1]

{¶19}   Jonathan Veley, attorney for the Thomases testified under oath that his bill for legal services was $16,969.00 and submitted an itemized statement of time and services rendered.  (Def. Exh. 1).  Attorney Veley testified that his hourly rate was $250.00 and was reasonable. In contrast, Attorney Benbow argued that the reasonable hourly rate was no more than $150.00 while he charged $200.00 per hour.  Tr. Jan. 12, 2023 at 27.

{¶20}   On February 6, 2023, the trial court entered a judgment on the issue of attorney fees pursuant to HCSSA and sanctions for frivolous conduct.

{¶21}   With regard to attorneys' fees under HCSSA, R. C. 4722.08(D), while the trial court found the hourly rate and fee of $16,969,00 reasonable, it found that the bulk of the matter was a simple contract dispute over the cost for the basement bathroom and thus only $2884.73 was payable to the Thomases by A-1 for violation of the HCSSA issue:

> While time was required to research and brief the HCSSA issues, the bulk of this matter was a simple contract issue.  The Court is not inclined to award fees that are disproportionate to the matters involved.  $850.00 is

---

[1] Appellant's attorney, Brian Benbow, agreed that the hearing would include both issues – attorneys' fees for violation of the HCSSA and attorneys' fees for frivolous conduct. Tr. Jan. 12, 2023 at 36.

approximately 17% of plaintiff's $4995.00 claim.  Accordingly, the Court awards $2884.73 in attorney fees pursuant to this statute.  This represents 17% of the defendant's attorney fees or about 11.5 hours at the hourly rate.

**{¶22}**   (Judgment Entry, Feb. 6, 2023 at 1-2).

**{¶23}**   With regard to attorney fees payable to the Thomases by A-1's attorney for frivolous conduct, the trial court awarded three hours totaling $750.00 to be paid by A-1's counsel. (Judgment Entry, Feb. 6, 2023 at 3).  The trial court based its finding of frivolous conduct on two separate filings.  The plaintiff's motion to strike defendant's post trial brief for untimely filing when it was filed timely and the plaintiff's motion for findings of fact after the court had expressly filed and captioned a judgment entry entitled findings of fact.

**{¶24}**   Plaintiff-Appellant, A-1 Heating and Cooling, timely appealed the decisions of the trial court.  Defendants-Appellees, Trent and Jessica Thomas filed no cross-appeal. This matter is before this Court on A-1's appeal assigning the following errors for review.

## ASSIGNMENTS OF ERROR

**{¶25}**   "I.   THE TRIAL COURT HAD NO AUTHORITY TO DISREGARD APPELLANT'S CHOICE OF VENUE ONCE APPELLANT SELECTED A PROPER VENUE. THE TRIAL COURT FURTHER COMMITTED PREJUDICIAL ERROR BY *SUA SPONTE* TRANSFERRING THE CASE PRIOR TO CONDUCTING AN EVIDENTIARY HEARING REGARDING VENUE.   THE TRIAL COURT ACCORDINGLY COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW BY CONDUCTING A TRIAL IN THE WRONG COUNTY, A COUNTY CHOSEN BY THE DEFENDING PARTY.

**{¶26}**   "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO AWARD APPELLANT $4,995.00 IN DAMAGES IN THAT THE UNDISPUTED

EVIDENCE WAS THAT APPELLEE WAS UNJUSTLY ENRICHED SUCH THAT THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶27}** "III.  THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW IN FINDING THAT THE HOME CONSTRUCTION SERVICE AND SUPPLIERS ACT (HCSSA) APPLIES TO THE SERVICES SUPPLIED BY APPELLANT IN THIS CASE.

**{¶28}** "IV.   THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY AWARDING ATTORNEY'S FEES BY APPLYING THE WRONG LEGAL STANDARD UNDER CIV. R. 11 AND R.C. 2323.51. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY AWARDING ATTORNEY'S FEES UNDER THE HOME CONSTRUCTION SERVICE AND SUPPLIERS ACT (HCSSA) WHEN NO SUCH VIOLATION OCCURRED."

I.

**{¶29}** In its first assignment of error, Appellant argues that the trial court [Muskingum County] erred when it *sua sponte* transferred its case to Licking County. A-1 argues that it was entitled to commence its action in Muskingum County because it was entitled to choose the forum and because Appellees were to make payment for services rendered in Muskingum County.  (Appellant's merit brief at 10.)  A-1 also argues that the trial court erred when it failed to hold a hearing on the issue of venue. (Appellant's merit brief at 7).  Before deciding the merits of the assignment of error, this Court will address the Appellees' claim that Appellant waived the issue of venue because it was not raised

in the Licking County trial court. (Appellee's brief at 10).  Because the matter was raised by Appellant in the pleadings below, we will consider the issue of improper venue.

*Law*

**{¶30}**   The trial court's decision to transfer a case to another venue will not be disturbed absent an abuse of discretion.  *Rose v. Cochran,* 2nd Dist., Montgomery No. 25498, 2013-Ohio-3755, ¶23; *Sheet Metal Workers Local 98 Pension Fund v. Whitehurst,* 5th Dist., Knox No. 03CA29, 2004-Ohio-191, ¶23.   Venue relates to the geographic division where a case can be tried.  *Morrison v. Steiner,* 32 Ohio St. 2d 86, 88, 290 N.E.2d 841 (1972).

**{¶31}**   Under Civ.R. 3(C)(1), a transfer of venue is authorized when the action has been commenced in an improper venue and defendants timely assert improper venue.

**{¶32}**   Civ.R. 3(C) contains a list of venues that provide a proper forum for an action. As applicable here, Civ.R. 3(C) states:

Proper venue lies in any one or more of the following counties:

(1)  The county in which the defendant resides;

(2)   The county in which the defendant has his or her principal place of business;

(3)  A county in which the defendant conducted activity that gave rise to the claim for relief;

(4)  …..

(5)  A county in which the property, or any part of the property, is situated if the subject of the action is real property or tangible personal property;

(6)  The county in which all or part of the claim for relief arose …;

**{¶33}**  The 1970 Staff Notes are instructive:

Generally, the law favors suits in places where the *defendant* resides or has a close connection or in places where the claim for relief arose or the subject of the action is located; therefore, the venue provisions of Rule 3(B)(10) which relates to the place where *plaintiff* resides or has a close connection, are not applicable unless none of the forums listed in Rule 3(B)(1) through Rule 3(B)(9) are available.

**{¶34}**  As noted by Appellees, 15 U.S.C. 1692 *et seq.* discusses the proper venue in legal actions brought by debt collectors and states that venue is proper in the place where the consumer signed the contract or the consumer's place of residence at the time the debt collector initiated the action. 15 U.S.C. §1692i(a)(2)(B), 15 U.S.C. § 1692i(a)(2)(A).

**{¶35}**  The question of venue is one of convenience and asks in which court, among all of those with jurisdiction, to best bring a claim.  *State ex rel. Florence v. Zitter,* 106 Ohio St.3d 87, 2005-Ohio-3804, 831 N.E.2d 1003, ¶23.  Civ.R. 3(H) makes clear that venue is not the same as jurisdiction.  "No order, judgment, or decree shall be void or subject to collateral attack solely on the ground that there was improper venue; however, nothing here shall affect the right to appeal an error of court concerning venue."

*Analysis*

**{¶36}**  In its complaint for money damages, Appellant asserted that venue is proper in Muskingum County because the contract was executed in Muskingum County. Attached to its complaint is a letter from Attorney Benbow to the Appellees asserting that

he is attempting to collect a debt and a notice required by the Fair Debt Collection Act, 15 U.S.C. § 1601. Appellant attached no invoices or proof that a contract was executed in Muskingum County. In its merit brief to this Court, Appellant switches arguments and alleges that venue is proper not where the contract is made, but rather where the breach of the contract occurs. (Appellant's merit brief at 9).

**{¶37}** Both of Appellant's arguments are misplaced. The trial court properly found that Licking County was the proper venue for the claim under Civ.R. 3(C). When the Appellees timely asserted improper venue in its answer and counterclaim, the trial court examined the issue of venue. Civ.R. 3(D) (1) requires such an examination. It states:

(1) When an action has been commenced in a county other than stated to be proper in division (C) of this rule, upon timely assertion of the defense of improper venue as provided in Civ.R. 12, the court shall transfer the action to a county stated to be proper in division (C) of this rule.

**{¶38}** A trial court need not hold a hearing when the improper venue is apparent on the face of the pleadings. This case had very little to do with Muskingum County. The Appellees resided in Licking County, the work was performed in Licking County, invoices were sent to Licking County and the debtors resided in Licking County. In short, Appellant received a full and fair opportunity to litigate its case in Licking County, the proper forum for this action.

**{¶39}** The trial court did not abuse its discretion in transferring this case to Licking County, and this Court overrules appellant's first assignment of error.

**II.**

**{¶40}** In its second assignment of error, Appellant argues that the trial court's failure to award it $4,995.00 in damages was against the manifest weight of the evidence.

*Law*

**{¶41}** The civil manifest weight of the evidence standard of review is the same standard that is applied in a criminal case. A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). When reviewing a judgment under a manifest weight of the evidence standard, an appellate court has an obligation to presume that the findings of the trier of fact are correct. *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶24. "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." *State ex rel. Celebrezze v. Environmental Enterprises Inc.,* 53 Ohio St. 3d 147, 159, 559 N.E.2d 1335 (1990); *Myers v. United Ohio Ins. Co.,* 5th Dist. Guernsey No. 11CA 000009, 2012-Ohio-340, ¶42.

*Analysis*
*Trial Court Found Trent Thomas Credible*

**{¶42}** The trial court found that the contract between the parties did not meet several requirements of the HCSSA. The court found that the excess costs that were invoiced to the Thomases on September 17, 2021 including basement bathroom plumbing were not approved as excess costs. Rather, the excess costs, with one exception, were part of the contract agreed to between the parties when A-1 submitted its quotes and the Thomases accepted them.

**{¶43}** The findings of the trial court were not against the manifest weight of the evidence. The trial court weighed the testimony of the witnesses and found the testimony of Trent Thomas more credible. Trent Thomas testified that he contacted A-1 to obtain an estimate for plumbing and heating for a new home that he planned to construct on a lot he purchased in Licking County, Ohio. He provided Brad Welker, owner of A-1, with blueprints for the home. While the original blueprints did not show a basement bathroom – only a crawl space – he testified that he told Welker that the home would have 3-1/2 bathrooms, including a full basement with a bathroom. Later emails, sketches and blueprints showed the bathroom in the basement. It was only after a later dispute over a leaking shower that Thomas was advised that more was owed than the invoices given to him for the plumbing which he approved.

**{¶44}** There is no dispute that Thomas did not approve any excess costs for plumbing in the main home over and above the amount he agreed to pay of $10, 375.00 for the plumbing and $17,250.00 for the geo-thermal unit. (Pl. Exh. 15, 18). Several invoices and interim emails were exchanged between the parties, and there was no discussion of extra costs with the exception of an out building water line and drain. It was not until September 17, 2021 that the excess charges were invoiced by A-1.

**{¶45}** When the Thomases refused to pay the extra charges, Welker refused to apply for a final plumbing permit with the Licking County Health Department.

**{¶46}** The trial court found that as a result of the violations of the HCSSA, the Thomases were entitled to damages in the amount of $330.00 for the final plumbing inspection and $275.00 for a ceiling plumbing leak, which Welker agreed was caused by the shower leaking. The trial court found that the Thomases did not prove any other

damages as a result of work not performed in a workmanlike manner. Thus, the trial court found the Thomases were entitled to damages in the amount of $605.00.

*Unjust Enrichment claim*

{¶47} Appellant argues that it is entitled to damages in the amount of $4,995.00 under an unjust enrichment claim. As noted by Appellant, unjust enrichment claims are implied contracts designed to prevent a person from receiving a benefit when it would be unjust to do so without payment. *FedEx Corporate Services, Inc. v. Heat Surge, LLC,* 5th Dist., Stark No. 2018CA00026, 2019-Ohio-217, 131 N.E.3d 397, ¶12.

{¶48} As explained by this Court in *Robinette v. PNC Bank,* 5th Dist. Licking No. 15-CA-47, 2016-Ohio-767, 2016 WL 771319, ¶23:

> The elements of an unjust enrichment claim are (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) ...

{¶49} While a party may plead both unjust enrichment and breach of contract, it cannot claim under both concepts. *Bunta v. Superior Vacu Press, LLC,* 171 Ohio St.3d 464, 2022-Ohio-4363, 218 N.E.2d 838, ("[T]he doctrine of unjust enrichment is limited when an express contract exists that concerns the same subject because the parties have fixed their contractual relationship in an express contract.")

{¶50} This is "hornbook" black letter law, as the Appellant suggests. *Hughes v. Oberholtzer,* 162 Ohio St. 330, 123 N.E.2d 393, 396 (1954) (holding that it is "generally

agreed that there cannot be an express agreement and an implied contract at the same time."); *Delicom Sweet Goods of Ohio, Inc. v. Mt. Perry Foods., Inc.,* 5th Dist., Perry No. 04CA4, 2005 WL 525185 at *4 (March 2, 2005) noting that a party cannot prevail on a theory of unjust enrichment or quantum meruit when they have formed an express contract); *Wolfer Ent. Inc. v. Overbrook Dev. Corp,* 132 Ohio App. 3d 353, 724 N.E.2d 1251, 1254 (1st Dist. 1999) (holding that a party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit because the terms of the agreement define the parties' relationship).

**{¶51}**  When the trial court found the parties had an express contract to install plumbing in the "main home" which included the basement bathroom, for the A-1 quote accepted by the Thomases, unjust enrichment could not apply. The trial court understood the difference between an express contract and unjust enrichment.  This is evident from the decision of the trial court to award Appellant $600.00 for work on the water line and drain for an outbuilding.  Thomas testified that he understood this would be an extra cost and not included in the contract for the main home.  The trial court recognized that the contract between the parties did not include the outbuilding plumbing and was outside its scope. The trial court awarded the Appellant $600.00 under the theory of unjust enrichment.  (Judgment Entry, Oct. 31, 2022 at 4).

**{¶52}**  Upon review, we do not find that the trial court's award of damages is against the manifest weight of the evidence.  The second assignment of error is overruled.

**III.**

**{¶53}**  In its third assignment of error, Appellant argues that the trial court erred when it found the Home Construction Service Suppliers Act (HCSSA), R.C. 4722.01 *et*

*seq* applied to the contract between A-1 and the Thomases.  In support of this claim, Appellant makes three assertions.  One, that the HCSSA does not apply because A-1 was making improvements to an already existing home.  As support, Appellant cites this Court's holding in *Estate of Tomlinson v. Mega Pool Warehouse, Inc.,* 5th Dist., Delaware No. 22 CAE 03 0020, 2023-Ohio-229, 206 N.E.3d 853.[2]  Next, Appellant claims that the HCSSA does not apply because Trent Thomas acted as his own general contractor, and finally because the Thomases did not allege A-1 maintained a general liability policy in force of over two hundred fifty thousand dollars as required under R. C. 4722.01(D).

{¶54}   These arguments fail.  The trial court found that the HCSSA applies to the contract between the parties, and we affirm that decision.

*Law*

{¶55}   In 2012, the Ohio Legislature amended the CSPA to exclude transactions involving home construction services as defined in R.C. 4722.01.  As a result, transactions that may have met the definition of "consumer transaction" were now exempted from the CSPA if they involved transactions involving a "home construction service contract."  R. C. 4722.01(C) defines "home construction service contract" as "a contract between an owner and a supplier to perform home construction services, including services rendered based on a cost-plus contract, for an amount exceeding twenty-five thousand dollars."  R.C. 4722.01(B) defines "home construction service" as "[T]he construction of a residential building." R.C. 4722.01(F) defines "residential building"

---

[2] This case was accepted for review by the Ohio Supreme Court on Assignment of Error No. III, the constitutional right to a jury trial.  *Estate of Tomlinson v. Mega Pool Warehouse, Inc.,*170 Ohio St.3d 1428, 2023-Ohio-1665.

as "a one-, two-, or three-family dwelling and any accessory construction incidental to the dwelling."

*Analysis*

**{¶56}** The HCSSA applies to this case because the record shows that the Thomases contracted with A-1 to provide a new heating unit and plumbing in a newly constructed home where no such construction existed before. The HCSSA applies because a geo thermal heating unit and plumbing in the main house are accessory construction incidental to the newly constructed dwelling and covered under the definition of R. C. 4722.01(F).

**{¶57}** A-1's reliance on this Court's holding in *Tomlinson* is misplaced because the Thomases' home was new construction and not an improvement to an existing home. *Estate of Tomlinson v. Mega Pool Warehouse, Inc., supra,* ¶23, ¶24. In *Tomlinson,* a homeowner filed a complaint against a pool and deck contractor alleging various claims of breach of contract, negligent workmanship and violations of the CSPA. The pool and deck were installed to an existing home. The trial court found in favor of the homeowner on breach of contract, breach of warranty and violations of the CSPA. The trial court awarded $230,840.50 in attorney fees. Mega Pool appealed arguing, *inter alia*, that the CSPA did not apply, but rather the HCSSA applied. This Court rejected that argument citing *Beder v. Cerha Kitchen and Bath Design Studio, LLC,* 11th Dist., Geauga No. 2022-G-0008, 2022-Ohio-4463. In *Beder,* the court found the CSPA and not the HSCCA applied to a home remodeling contract as the CSPA applies to transactions involving an already-existing construction and the HSCCA applies to new construction. Like the *Beder* Court, this Court in *Tomlinson* found that the addition of the swimming pool and

improvement of the existing concrete deck was an "improvement to an already-existing home." "Accordingly, we find the transaction covered by the CSPA and not the HSCCA." *Tomlinson,* at ¶24.

{¶58} The record here amply demonstrates that the Thomases hired A-1 for a newly constructed home. A-1 did not replace an already-existing heating and cooling unit or replace plumbing in an already-existing home. It supplied labor and materials for a home that did not exist before the Thomases' decision to create a new one-family dwelling based on blueprints.

{¶59} Appellant's claim that Trent Thomas is precluded from application of the HCSSA because he acted as his own general contractor is also misplaced. R.C. 4722.01(E) states in part that an owner may include the owner of the property.

{¶60} So, too, Appellant's claim that the $250,000 general liability insurance policy was not met is misplaced. Brad Welker, owner of A-1, testified that he held such a policy. Finally, the work performed exceeded $25,000, R.C. 4722.01(C).

{¶61} In short, the trial court did not err as a matter of law or abuse its discretion in finding that the HCSSA applies to the contract between the parties. Appellant's third assignment of error is overruled.

**IV**

{¶62} In its final assignment of error, Appellant makes two claims regarding the award of attorneys' fees. First, it claims that Appellees are not entitled to attorney fees under the HCSSA because they are not the prevailing party. Second, it claims that its attorney's actions were not frivolous, and the trial court erred in finding that Appellees were entitled to $750.00 payable by its attorney for frivolous conduct.

*Law*
*Standard of Review*

**{¶63}** The HCSSA allows a trial court to award attorneys' fees to a prevailing homeowner if the home construction service supplier has knowingly committed an act or practice that violates the statute. R.C. 4722.08(D)(2).

**{¶64}** Again, the *Tomlinson* case is instructive. This Court addressed the standard of review for violating a statute that allows for the award of attorneys' fees. The *Tomlinson* Court found that the abuse of discretion standard applies. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere, *Id.* at ¶ 26.

**{¶65}** On the other hand, an appellate court reviewing a trial court's decision imposing sanctions or awarding attorney's fee for frivolous conduct under R. C. 2323.51 and Civ.R.11 is a mixed bag. The question of what constitutes frivolous conduct may be either a factual determination or a legal determination. *Miller v. Miller,* 5th Dist., Holmes No. 11CA020, 2012 WL 2415143, ¶17, (June 26, 2012); *Whitman v. Whitman,* 5th Dist., Tusc. No. 2022AP10 0041, 2023-Ohio-2732, ¶18. A determination that the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis. Legal issues are reviewed by an appellate court under a *de novo* standard of review and need not defer to the judgment of the trial court. *Ferron v. Video Professor, Inc.,* 5th Dist., Delaware No. 08 CAE 09 055, 2009-Ohio-3133, ¶44, appeal not allowed, 123 Ohio St.3d 1495 (2009); appeal after remand, 2010-Ohio-3585. A factual issue, on the other hand, requires some deference to the trial court and will not be disturbed absent an abuse of discretion. *Estep v. Kasparian,* 79 Ohio App.3d 313, 316, 607 N.E.2d 109, (10th Dist.

1992).  An abuse of discretion is more than an error of law or judgment and implies that the trial court's attitude or decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

*Frivolous Conduct*

{¶66}  Under R.C. 2323.51, a party adversely affected by frivolous conduct in a civil action may file a motion for an award of attorneys' fees.  R.C. 2323.51(A)(2)(a) defines "frivolous conduct" as any of the following:

(i)      It obviously serves merely to harass or maliciously injure another party to the civil action … or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii)      It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii)      The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv)      The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

**{¶67}** This Court has found that a motion for sanctions under R.C. 2323.51 requires a three-step analysis by the trial court: "(1) Whether the party engaged in frivolous conduct, (2) if the conduct was frivolous, whether any party was adversely affected by it and (3) if an award is to be made, the amount of the award." *Ferron v. Video Professor, Inc, supra,* ¶44, ¶104.

**{¶68}** And finally, the trial court must decide that the attorneys' fees requested were incurred as a direct and identifiable result of defending the frivolous conduct and a further finding that they are reasonable under the Ohio Rules of Professional Conduct. *Id.* at ¶¶104, 106.

**{¶69}** In *Bittner v. Tri-City Toyota, Inc.,* the Ohio Supreme Court set forth a two-part test for determining what constitutes "reasonable" attorneys' fees. *Bittner v. Tri-City Toyota, Inc.,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). First, the trial court multiplies the number of hours reasonably expended by the attorney by a reasonable hourly rate. *Id,* at 145. Then, the trial court may adjust the fee upward or downward based on the factors listed in Prof.Cond.R. 1.5(a).

*Attorney Fees Under HCSSA.*

**{¶70}** The HCSSA allows the award of attorney fees to a prevailing party. "The court may award to the prevailing party reasonable attorneys' fees limited to the work reasonably performed, if either of the following apply: …(2) The home construction service supplier has knowingly committed an act or practice that violates this chapter," R.C. 4722.08(D)(2).

{¶71} A prevailing party is generally the party "in whose favor the decision or verdict is rendered and judgment entered." *Metro Renovations 12 LLC v. Sabir,* 5th Dist., Fairfield No. 2022 CA 00022, 2023-Ohio-1867, 215 N.E.3d 1242, ¶67.

*Analysis*
*The Thomases Were Prevailing Party and Entitled to Attorney Fees Under the HCSSA*

{¶72} The Thomases are the prevailing party. The net award of $5.00 was in favor of the Thomases. The trial court found that A-1 violated the HCSSA and rendered judgment in favor of the Thomases.

{¶73} With regard to the amount of attorney fees, the record reflects that the trial court held an evidentiary hearing on the matter on January 12, 2023. At that hearing, the attorney for Appellees testified under oath as to his invoice for attorney fees in the amount of $16,969.00. (Def. Exh. 26). Appellant engaged in a detailed cross examination. The Appellant suggested that the rate of $250.00 per hour was not reasonable and suggested a sum of $150.00 more reasonable while admitting that his hourly fee was $200.00.

{¶74} While the trial court found the $250.00 hourly rate reasonable as well as the total hours expended reasonable, the court awarded the sum of $2,884.73 representing seventeen percent of $16,969.00 or about 11.5 hours at the hourly rate. "While time was required to research and brief the HCSSA issues, the bulk of this matter was a simple contract dispute. The Court is not inclined to award fees that are disproportionate to the matters involved." (Judgment Entry, Feb. 2023 at 2).

{¶75} The trial court's award of $2,884,73 for the HCSSA violations, a downward deviation from $16,969.00, is not an abuse of discretion.

*Appellant's Attorney Engaged in Frivolous Conduct Under R.C. 2323.51.*

{¶76} The record and the judgment entry reflect that the trial court applied the correct definition of frivolous conduct when considering attorney fees for frivolous conduct.

{¶77} Noting that many of plaintiff's filings were excessive or needless, the court awarded attorney fees based on two particular filings by plaintiff. The filing of a motion for findings of fact after the court had already specifically filed a judgment entry with findings of fact, and filing a motion to strike a post-trial brief for untimely filing when it was filed in a timely manner.

{¶78} This Court recently discussed frivolous conduct in *Whitman v. Whitman, supra,* ¶ 24. R.C. 2323.51(A)(2) only requires the presence of one of the factors listed for a frivolous determination. Here, the Appellant's attorney filed a motion to dismiss a post-trial brief that was clearly an error and caused unnecessary delay or an increase in the cost of litigation. He filed a request for findings of fact after the trial court had expressly issued findings of fact that were supported by the record, further delaying the action and increasing the cost of litigation.

{¶79} Appellee filed a response to both frivolous filings and was adversely affected by the attorney's conduct.

{¶80} The trial court did not abuse its discretion or err as a matter of law in determining that Appellant's attorney engaged in frivolous conduct. So, too, this Court does not find that the fees awarded of $750.00 were excessive or unreasonable. The trial court properly held an evidentiary hearing at which the attorney for the Thomases testified under oath and submitted an itemized list of services. *Compare Whitman v. Whitman,*

*supra* (the trial court awarded attorney fees and costs of $10,057.58 based on an affidavit of counsel and itemized invoice). ¶28; *Ferron v. Video Professor, Inc.,* 5th Dist., Delaware App. No. 10CAE 01 0008, 2010-Ohio-3585*,* ¶38 (award of $119,418.87 on affidavit of counsel and itemized invoices); *Almasoodi v. J. Harris Construction Co.,* 5th Dist., Delaware No. 22 CAE 060053, 2023-Ohio-895, 211 N.E.3d 209 (2023), ¶80-81 (award of $28,242.24 attorney fees on $7,035.53 damages based on affidavit of counsel and itemized invoices). Here, the trial court awarded three hours at $250.00 per hour for a total attorney fee of $750.00 based on the sworn testimony of an attorney and itemized invoices.

**{¶81}** In short, the record demonstrates the trial court stated the basis for the fee determinations, carefully considering the hours expended on the HCSSA issue finding that $2884.79 out of a bill of $16,969.00 was spent on researching and arguing the HCSSA claim. As to attorney fees under R. C. 2323.51, while finding that Appellant's counsel prepared voluminous pleadings out of proportion to the case which were excessive and needless, it narrowed its frivolous finding to two pleadings; a motion to dismiss post trial brief on timeliness when it was timely and a request for findings of fact and conclusions of law that had already been filed.

**{¶82}** Upon review, we do not find that the trial court failed to apply the relevant legal standards in its fee determinations. We find Appellant's fourth assignment of error is without merit and is overruled.

*Conclusion*

**{¶83}**   Appellant's assignments of error are without merit and are overruled.  The decisions of the trial court below are hereby affirmed.

**{¶84}**   For the foregoing reasons, the judgment of the Municipal Court of Licking County, Ohio, is affirmed.


By: Wise, J.

Baldwin, J., concurs.

Hoffman, P. J., concurs separately.


JWW/kt 0108

*Hoffman, P.J., concurring*

{¶85} I concur with the majority's analysis and disposition of all four of Appellant's assignments or error.

{¶86} I write separately only to note, regarding Appellant's first assignment of error, I would also find Appellant waived any challenge to the transfer of the case to the Licking County Court by failing to object to the transfer in that court. Furthermore, Appellant's answer to Appellee's counterclaim filed in the Muskingum County court, asserting venue in Muskingum County may be improper, raises the issue of whether Appellant invited the error of which it now complains.